## UNITED STATES v. DAVISON.

(District Court, W. D. Pennsylvania. October 1, 1924.)

No. 2131.

1. **Internal revenue ⊗⊃7 — In determining whether transaction taxable, substance and not form considered.**

In determining whether corporate dividend is subject to income tax as cash rather than stock dividend, substance and not form is to be regarded.

2. **Internal revenue ⊗⊃7—Dividend held not income of stockholders, who had agreed to take stock in payment.**

Where corporation increased capital stock and declared a 100 per cent. dividend, ostensibly payable in cash after holders of more than 85 per cent. of stock had agreed to accept payment in stock, which agreement they performed, *held*, that stock so received by them was not taxable as income, notwithstanding dividend was paid in cash to smaller stockholders.

3. **Internal revenue ⊗⊃7 — Parol evidence admissible to show dividend paid in stock, when according to corporate records it was paid in cash, held admissible in action to collect income tax.**

In action to collect income tax on dividend which, according to corporation's books, was paid in cash, parol evidence was admissible to show that dividend was paid to defendant in stock pursuant to agreement made before dividend was declared: the stockholder not being estopped by records when no one had been misled.

4. **Stipulations ⊗⊃18(5)—Not even government should be permitted to repudiate stipulation to abide by judgment which proved to be adverse.**

Not even government, after agreeing to abide by decision in particular case as being decisive of other similar cases, should, after adverse judgment, be permitted to repudiate agreement.

At Law. Action by the United States against George S. Davison. Judgment for defendant.

A. Calder Mackay, of Washington, D. C., and Warren Harding Van Kirk, of Pittsburgh, Pa., for the United States.

Reed, Smith, Shaw & McClay and John G. Frazer, all of Pittsburgh, Pa., for defendant.

THOMSON, District Judge. This is an action brought by the United States under the Act of Congress of October 3, 1913 (38 Stat. 114), against George S. Davison, a citizen and resident of the Western district of Pennsylvania, to recover the sum c $4,616.40, with interest, by reason of the

1 F.(2d)—30

declaration and payment to him in the month of April, 1913, as a stockholder of the Gulf Oil Corporation, of a dividend of 100 per cent., amounting to $153,400. The parties to the action, by stipulation filed, waived a trial by jury and agreed to the principal facts involved in the case, with the right, however, to object to their admissibility for any reason; each party also having the right to offer other evidence at the hearing.

### Findings of Fact.

For the year 1913 the defendant filed his income tax return, omitting to show said dividend as income. The internal revenue collector of the district on September 25, 1917, made demand of defendant for its payment, which defendant refused and still refuses to pay, denying legal liability therefor. The Gulf Oil Corporation, hereafter for convenience called the Gulf Corporation, was organized under the laws of the state of New Jersey, and began business in February, 1907. It is a holding company, and, through its subsidiary companies, engaged and still engages in the production, transportation, refining, and marketing of oil. Prior to and at the time of the declaration of the dividend the defendant was the owner of 1,534 shares of the corporation's stock, of the par value of $100 per share. At a meeting of the board of directors of the Gulf Corporation, duly held on February 24, 1913, a resolution was adopted wherein the board recommended to the stockholders the adoption of substantially the following plan, namely: That the capital stock of the company be increased from its then authorized amount of $15,000,000, to $60,000,000; that $22,416,400 of capital stock be offered to the stockholders at par, giving to each stockholder the opportunity to subscribe for twice as many shares as he now holds, any shares not so subscribed for to be sold by the board at par, the remainder of the authorized capital stock to be held for the future purposes of the company; that at such special meeting, the stockholders shall request, and thereafter the board in pursuance of such request shall declare, a dividend of 100 per cent. on the present issued capital stock of $11,208,200, which dividend may be applied to the payment of the new stock subscribed for; that the secretary be authorized to mail to each stockholder a printed copy of the statement of plan in the form submitted to said meeting, together with a proxy and form of subscription agreement attached thereto;

that the stockholders be given to and including April 10, 1913, to subscribe for such additional shares of stock, and that such subscriptions be made payable to the company, at its office in Pittsburgh, Pa., on or before April 15, 1913.

At a meeting of the stockholders of the Gulf Corporation held on March 20, 1913, it was resolved that the board of directors be authorized to cause to be offered to the stockholders at par $22,416,400 of the capital stock of the company, giving to each stockholder the opportunity to subscribe for twice as many shares as he now holds, and any shares which shall not be so subscribed for on or before April 10, 1913, shall be sold by the board at par; that the board of directors be authorized to sell the remaining unissued stock of the company at one time, or from time to time, as in the judgment of the board may be for the best interests of the company; that the stockholders request the board to declare a dividend of 100 per centum on the present issued capital stock of $11,208,200, which dividend may be applied by the stockholders to the payment of new stock subscribed for; that the stockholders, in order to avail themselves of the privilege to subscribe, must subscribe in writing on the forms approved by the directors, and such subscriptions must be received at the office of the company in Pittsburgh on or before April 10, 1913; otherwise, the right to subscribe may be deemed waived; all subscriptions to be payable in cash at the office of the company on or before April 15, 1913; that the action of the directors issuing to the stockholders the circular letter dated March 3, 1913, with the form of subscription therein mentioned, be ratified and approved.

At a meeting of the board of directors of the Gulf Corporation, held on March 31, 1913, it was resolved that the action of the stockholders at their meeting held March 20, 1913, amending paragraph 4 of the amended certificate of incorporation, increasing the capital stock from $15,000,000 to $60,-000,000, be approved; that $22,416,400 of the capital stock of the company be sold at par, each stockholder being first given the opportunity to subscribe for twice as many shares as he now holds, upon the terms set out in the circular letter approved by the board at its meeting of February 24, 1913; that any portion of said $22,416,400 of increased capital stock not subscribed for by the present stockholders on or before April 10, 1913, be sold at par, and the proposition of T. Mellon & Sons to purchase said unsubscribed stock at par, be and the same is hereby accepted; that a cash dividend of 100 per cent. on the present issued capital stock, namely, $11,208,200, be and is hereby payable to the stockholders of record on April 15, 1913.

The requisite steps, increasing the authorized capital stock to $60,000,000, were taken. The payment of the 100 per cent. dividend was effected in the following manner: Checks were made out in favor of all the stockholders of the corporation for the amount of the dividend receivable by them respectively, and the amount of these checks was debited in the company's cash account. Of this amount, checks aggregating $11,-034,200 (including a check in favor of the defendant in the sum of $153,400) were made out in favor of the various stockholders who had signed a paper in the form shown in Exhibit D, which checks were delivered by the treasurer of the corporation to the secretary of the corporation, W J. Guffey, who immediately indorsed all of said checks in blank, and delivered them back to the treasurer of the Gulf Oil Corporation, pursuant to the powers contained in Exhibit D. The treasurer of the corporation thereupon caused entries to be made upon the individual stock ledger of the company, crediting the defendant and the other stockholders aforesaid, owning in the aggregate $11,034,200, with the amount of the checks as payment for shares of the capital stock of the corporation at par, and caused to be made out and delivered to the defendant and such other stockholders who had signed Exhibit D certificates for said shares in the amount of the dividend so declared on the shares of stock owned by such stockholders respectively. Stockholders holding 1,740 shares of stock, on which the said dividend amounted to $174,000, not having signed Exhibit D, received the checks in cash payment of said dividend, and did not use the same for the purchase of additional stock of the Gulf Corporation.

For the purpose of throwing light upon and determining the true nature of the plan of financing adopted by the company, including the legal effect of the adoption of the foregoing resolutions by the board of directors and the stockholders of the Gulf Corporation, I find the following additional facts:

The Gulf Corporation is a holding company, and carries on no business, except through its subsidiary companies. It was, in fact, a reorganization of the J. M. Guffey Petroleum Company and the Gulf Re-

fining Company, which had, since 1901, been engaged in the oil business in Texas. Through its subsidiaries the Gulf Corporation is engaged in the production, transportation, and marketing of oil, the production being carried on chiefly in Oklahoma, Louisiana, and Texas, the oil being transported by pipe lines to the Gulf, where its refineries are situated, and its products are marketed throughout the United States and in foreign countries, for which purpose it owns a fleet of vessels. Its principal subsidiary companies, all of the capital stock of which was owned by the Gulf Corporation, were the J. M. Guffey Petroleum Company, the Gulf Pipe Line Company, the Gulf Pipe Line Company of Oklahoma, the Gulf Refining Company, the Indiana Oil & Gas Company, the Gypsy Oil Company, and the Gulf Commissary Company. The several companies mentioned, together with other subsidiary companies owned by the Gulf Corporation, constituted a single enterprise, carried on by the Gulf Corporation. The business so carried on by the Gulf Corporation was very successful.

On December 31, 1912, its capital stock outstanding was $11,208,200. Treating the enterprise as a whole and including its subsidiaries, it had a surplus slightly in excess of that amount, which surplus had arisen through accumulation of earnings. The company had paid no dividends; its earnings being reinvested in various kinds of property necessary for its business. It had outstanding indebtedness of approximately $14,000,000, of which $7,000,000 consisted of bonds, which would mature rapidly, and about $5,000,000 was in the form of floating indebtedness or borrowed money, principally from banks. The corporation was without credit, except as was provided by its stockholders; its loans having been obtained through the personal credit of its principal stockholders, Messrs. A. W. Mellon and R. B. Mellon.

In the early part of 1913 it became apparent that the refinancing of the company was necessary, as the company was without funds to meet its maturing obligations, and, as its business was growing, large amounts of money were needed in order to successfully carry on the enterprise. At the closing of the accounts as of December 31, 1912, the officers and board of directors of the company, after careful consideration, found the situation to be substantially this: While the corporation, through its subsidiaries, had earned a large amount of money, these earnings were all put back into and

were used in extending, enlarging, and carrying on the business of the corporation, being represented largely by fixed assets, such as additions to the oil-producing territory of the corporation, the equipment used in the exploration for and the production of crude oils, in stocks of crude oils and of manufactured oils, extension of pipe lines and tanks for the storage of oil, increased capacity of the refineries of the corporation, the purchase of additional vessels for the transportation of oil, and other like matters, and therefore, in the opinion of the directors, the earnings did not exist in such shape that a dividend payable in cash could be made to the stockholders. In addition, in the judgment of the directors and officers of the corporation, the successful carrying on of the business required a large amount of additional capital. While the corporation had been prosperous, it was without sufficient working capital, except as it was able to borrow money for this purpose, which it had been enabled to do by reason of the credit extended to it through its larger stockholders; but, owing to the steadily increasing business done by the corporation, additional capital was required, and, in the opinion of its officers and directors, the company was without credit to obtain such capital, unless the same was provided by its stockholders, or some plan of refinancing adopted.

The chief stockholders were Messrs. A. W. Mellon and R. B. Mellon, who together owned 78,584 shares, out of a total of 112,082 shares outstanding. In addition to this, W. L. Mellon owned 12,655 shares. George S. Davison, the defendant, owned 1,534 shares. Mr. A. W. Mellon had been connected with the enterprise from its inception and since the organization of the Gulf Corporation, and had charge of its finances, and was looked to by the stockholders to formulate the necessary plan for refinancing the company. After full consideration, Mr. Mellon suggested that the refinancing be effected as follows: That the capital stock of the corporation be increased from $15,000,000 to $60,000,000; that of such increased stock an amount equal to 100 per cent. of the then outstanding stock be sold at par for cash, so as to provide the corporation with the funds necessary to meet the existing indebtedness and properly conduct its business; that, for the purpose of inducing or making attractive to the stockholders the subscription to the new shares of stock, a dividend of 100 per cent. be paid, the same to be accepted by the stockholders

in stock. The arrangement as thus outlined was agreed to by A. W. Mellon, R. B. Mellon, W. L. Mellon, and George S. Davison, and by other of the larger stockholders, who together held approximately 93 per cent. of the outstanding stock, each of said stockholders agreeing to take said 100 per cent. dividend in stock, and in addition to subscribe for an equal amount of new stock. While the greater part of the capital stock of the corporation was held by a few persons, there was a considerable number of smaller stockholders, the amount owned by them aggregating a considerable amount of money. It was expected that substantially all of the stockholders would agree to accept payment of such dividend in stock, and take and pay for their share of the additional stock to be sold at par.

In order to avoid the delay incident to the obtaining of such agreements in advance, and that such plan might be proceeded with promptly, Messrs. A. W. and R. B. Mellon (acting in the name of T. Mellon & Sons) agreed that to the extent that such other stockholders should fail or refuse to take payment of said dividend in shares of stock, and should fail to subscribe for their share of the additional 100 per cent. of stock to be issued, to provide new capital, they would take and pay the corporation at par for all shares not so taken or subscribed by the other stockholders. This arrangement and agreement was made in Pittsburgh, and was the result of conferences taking place during the month of January and the early part of February, 1913. At that time the board of directors of the Gulf Corporation consisted of Messrs. W. L. Mellon, A. W. Mellon, and R. B. Mellon, J. H. Reed, T. R. Given, William Flinn, and E. A. Lyon; the said W. L. Mellon being president and A. W. Mellon vice president of the corporation. After this plan was agreed upon, the resolutions as subsequently passed by the board of directors and stockholders, hereinbefore referred to, were prepared by counsel for the corporation for the purpose of carrying out the arrangement so outlined, and at that time it was the practice, under the law of New Jersey, to accomplish the payment of a stock dividend, either by the payment of such dividend directly in stock, or by the declaration of a dividend equal to the amount of stock to which stockholders were at the time authorized to subscribe pro rata. Before the adoption by the board of directors of the resolutions heretofore referred to, the arrangement and agreement here outlined was communicated to the board of directors at the meetings referred to, and the resolutions as so adopted were passed upon the faith of the agreement on the part of the defendant and other stockholders to take the payment of the dividend in shares of stock, and the agreement of Messrs. A. W. and R. B. Mellon to take and pay for any unsubscribed stock. Without such understanding and agreement, the said dividend of 100 per cent. could not have been declared.

The defendant and the other large stockholders accepted payment of the said dividend of 100 per cent. in shares of stock of the corporation, out of the increase of stock as authorized, and such payment was so accepted by them in pursuance of the agreement and understanding above set forth, and A. W. and R. B. Mellon took and paid for to the corporation, at par, all shares of stock which the stockholders did not subscribe for and pay. At the time of the declaration of said dividend and payment thereof, the corporation did not have cash with which to pay the same, or any substantial part of it. The cash on hand on March 31, 1913, amounted to only $2,337.36, and there was no material change in this amount on April 13, 1913. The additional cash received on and after that date was the proceeds from the sale of the newly issued stock.

On December 13, 1913, the surplus shown in the profit and loss account of the Gulf Corporation amounted to $541,303.65, and it was only by virtue of the declaration on February 7, 1913, and payment on April 11, 1913, of dividends by its subsidiary companies, aggregating $11,424,400, that the Gulf Corporation had a surplus available for the declaration of said dividend of 100 per cent. No part of the dividends from the subsidiaries to the Gulf Corporation was paid in cash, but the dividends were mere bookkeeping transactions, by which the surplus of the subsidiary companies (which consisted mostly of debts from other subsidiaries) was transferred to the Gulf Corporation, and a credit to the subsidiaries for the amount of the dividend was set up on the books of the Gulf Corporation. Upon the payment to the stockholders of the Gulf Corporation, of the dividend of $11,208,200, the amount of the dividend was transferred on the books of the company from the surplus account to the capital account, and has since been retained as permanent capital of the company. The declaration of said dividend was based wholly on the earnings of the Gulf Oil Cor-

poration through its subsidiary companies, from the time of its organization to December 31, 1912, hereinbefore referred to.

This suit is one of more than 20 proceedings brought in this court by plaintiff against various stockholders of the Gulf Oil Corporation, for the purpose of collecting additional income taxes for the year 1913, alleged to be due because of the aforesaid payment of the 100 per cent. dividend. Prior to the entry of such suits, William A. Seifert, Esq., of Pittsburgh, one of the attorneys for the various stockholders, including the defendant, agreed with Arthur A. Ballantine, Esq., then Solicitor of Internal Revenue, that the question involved should be tried in one of the suits, and that the decision in that suit should govern in all of the other cases; this for the purpose of avoiding the labor and expense which would be incurred by both parties if all the suits were prepared and tried. This agreement was subsequently confirmed and approved by E. Lowry Humes, Esq., United States district attorney for the Western district of Pennsylvania, and by B. B. McGinnis, Esq., assistant district attorney for that district, who was especially in charge of tax cases; such agreement and confirmation being both before and after the suits were brought. It was also known to and approved by Mr. Ballantine's successor as Solicitor of Internal Revenue after such suits were instituted. In pursuance of this agreement, the case of United States, by C. G. Lewellyn, Collector of Internal Revenue, v. William Larimer Mellon, at No. 2128, May term, 1919, was selected as the case to be tried, and pleadings were filed in that case. Plaintiff filed no statement of claim in this suit, or in any of the suits brought against the other stockholders, until after the final decision in the William Larimer Mellon Case. That case was duly tried in this court, and judgment therein was entered for the defendant. 279 Fed. 910. An appeal was taken from that judgment to the United States Circuit Court of Appeals for the Third Circuit, at No. 2831, March term, 1922, and after hearing thereon the judgment of this court was affirmed. 281 Fed. 645. No appeal was taken from the decision of the Circuit Court of Appeals, and the judgment so rendered for the defendant in that case thus became final.

## Conclusions of Law.

Under the foregoing state of facts, what legal conclusion should be drawn? It is very true that the resolutions with reference to the dividend referred to it as payable in cash; but it is equally true that the holders of the great majority of stock, including the defendant, had prior to the declaration of the dividend agreed not to take in cash, but in stock of the company. It was with this understanding and arrangement that the resolutions were passed, and the parties to this agreement not only considered themselves so bound, but carried out the arrangement in good faith, thus carrying into effect the method of refinancing the company, which had been definitely agreed upon, and without which no dividend would have been declared.

[1] In determining whether a particular transaction is subject to tax, the decisions hold that the substance, and not the form, is to be regarded. In United States v. Phellis, 257 U S. 156, 42 Sup. Ct. 63, 66 L. Ed. 180, the Supreme Court said: "We recognize the importance of regarding matters of substance and disregarding forms in applying the provisions of the Sixteenth Amendment and income tax laws enacted thereunder. In a number of cases besides those just cited we have under varying conditions followed the rule. Lynch v. Turrish, 247 U S. 221; Southern Pacific Co. v. Lowe, 247 U. S. 330; Gulf Oil Corporation v. Lewellyn, 248 U. S. 71." This has been the rule from the time of the decision in Bailey v. Railroad, 106 U. S. 109, 1 Sup. Ct. 62, 27 L. Ed. 81, to the present time.

[2] It is conceded that some of the stockholders took cash. As to them, it was a cash dividend, and taxable as such. But as to the defendant, and the other stockholders who received stock, it would appear under the facts to be a stock dividend, and not taxable. The question is to be determined from the result to and the effect upon the individual stockholder. In the above case of U. S. v. Phellis, the Supreme Court said: "But, further, it would be erroneous, we think, to test the question whether an individual stockholder derived income in the true and substantial sense through receiving a part in the distribution of the new shares, by regarding alone the general effect of the reorganization upon the aggregate body of stockholders. The liability of a stockholder to pay an individual income tax must be tested by the effect of the transaction upon the individual."

It could hardly be argued that if the resolution had provided that the dividend was payable in stock, but had given an option to the stockholder to receive cash, which certain stockholders elected to take, that the

latter were not taxable because of the form of the resolution. The taxing power would undoubtedly have looked at the substance, disregarding the form. If the purpose of the corporation is to retain the accumulated profits, while in effect distributing them as a dividend, it would seem immaterial whether the stock was issued direct or the stockholder given the right to apply the cash dividend declared in payment of the new stock, as the effect in the two cases would be precisely the same. In either case, the accumulated profits are legally retained for corporate purposes. In neither case has the stockholder received anything out of the company's assets for his individual use. On the other hand, his original investment and its accumulations, still remain the property of the company and subject to the hazards of its business. In fact, he has not received that which may be properly designated income. But in the case at bar the defendant, in the face of his agreement, did not have the option to take in cash his interest as a stockholder in the surplus of the company; it still remains in the company, as the surplus covered by the dividend was transferred to the capital account and remained permanently in use in the company's business.

[3] It is argued that the testimony offered by defendant in relation to the actual agreement between the parties, as to the method of financing the corporation, is wholly inadmissible, as it is in effect an attempt to alter or vary the company's records. This is not a question, as the government assumes, of attempting to vary by parol the records of a corporation. The corporation is not a party here. There is no controversy between the corporation and another who is seeking to assail its records. The action is by the government, which alleges liability, against a stockholder, because of certain averments in the corporation's records. These may or may not represent the actual state of the case. A stockholder is not estopped from showing the truth as to these, because no one has been misled thereby. The records make out a prima facie, not a conclusive, case against the defendant.

But the question so far as this action is concerned, should be considered foreclosed by the judgment of the Circuit Court of Appeals in the case of United States v. William Larimer Mellon. That case was in its facts precisely the same as this. It involved the taxability of the same dividend, and paid under the same circumstances by the Gulf Corporation, that is involved in the case at bar. The stipulations may not have been precisely the same, but they involved identically the same legal questions, on precisely the same state of facts. Both the court below and the appellate tribunal had the actual facts before them, and counsel for the government must be presumed to have presented everything deemed material to support the government's case. It was greatly to the interest of both parties to that action that a score of cases, involving the same questions of fact and law, should be disposed of by the trial and final adjudication of a single case. This both sides agreed to.

[4] I shall not pass on the question as to whether the government is absolutely precluded by the agreement made. This ought not to be necessary. It is a question of good faith. No one, not even a sovereign nation, should be permitted to gamble on the result of a judgment, and then repudiate the result when the judgment is adverse.

For the reasons set forth in the foregoing opinion, judgment should be entered in favor of the defendant; and it is accordingly so ordered.