## BOARD v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5532.

Circuit Court of Appeals, Sixth Circuit.
June 11, 1931.

J. C. W. Beckham, Jr., and Elwood Hamilton, both of Louisville, Ky. (Woodward, Hamilton & Hobson, of Louisville, Ky., on the brief), for petitioner.

A. H. Conner, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Stanley Suydam, all of Washington, D. C., on the brief), for respondent.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

74

HICKENLOOPER, Circuit Judge.

The above-entitled petition for review was consolidated, for purposes of the hearing, with the petitions in W. E. Massey v. Commissioner (C. C. A.) 51 F.(2d) 76, and Lincoln Bank & Trust Co. et al. v. Commissioner (C. C. A.) 51 F.(2d) 78, also this day decided. All involve income tax assessments for the years 1919, 1920, and/or 1921, and the point to be here first decided likewise appears in the other two cases.

The Old Dominion Oil Company was organized on December 31, 1917, and petitioner was a stockholder throughout the years 1918, 1919, and 1920. In the summer of 1918 those in control of the company conceived the plan of securing for it certain valuable leases belonging to the Southwestern Petroleum Company and the Cliff Petroleum Company. These were to be secured upon the payment of $200,000 in cash and an equal amount to be obtained by and paid from the sale of oil produced by operating the properties. The Old Dominion Oil Company was prepared to carry on these operations, but was without funds to make the initial payment.

The plan finally adopted was that participation in the purchase was to be offered to all stockholders of the Old Dominion Oil Company upon payment of 40 per cent. of the par value of their holdings in that company. At this rate, all stockholders—total $500,000 par—must participate in order to raise the contemplated amount. The stockholders making such payments were to be "the owners of all the right, title and interest in and to the aforesaid contract of August 12, 1918, in proportion to their said respective payments." The Old Dominion Oil Company was then to pay the first installment of the purchase price ($200,000) from the advances of its stockholders, operate the properties, and from the proceeds of sale of the oil produced apply one-half in payment of the deferred installment of the purchase price, and hold the other half for the use and benefit of the contributing stockholders. When the total purchase price had been paid, and a fund of $200,000 had also thus been accumulated for the contributing stockholders, the original contributions of such stockholders were to be repaid, without interest, and the property was to be transferred from them to the Old Dominion Oil Company in exchange for an equal par value ($200,000) of its stock. Thus contributing stockholders were to receive repayment of their advances, plus an equal amount of capital stock of the Old Dominion Oil Company. In other words, for their advancements put at risk, they were to receive, contingently, return of the advancements and a 40 per cent. stock dividend or new stock issue.

The options thus given were exercised by or on behalf of all stockholders, the leases were transferred to the Old Dominion Oil Company, and that company thereafter successfully operated the properties. But when the time arrived for the repayment of the advances made by the stockholders, as originally contemplated, the holders of warrants or stock rights were given stock to the amount of twice the original advance, instead of an equal amount of cash and of stock. As of July 31, 1919, petitioner thus received stock, both on account of the payments made upon his holdings in August, 1918, and also in respect of warrants or stock rights in said project which he had purchased in the interim. This was held by the Commissioner to constitute an exchange of property within section 202 (b) of the Internal Revenue Act of 1918 (40 Stat. 1060) —an exchange of an interest in the oil leases for stock having a fair market value as of the date of receipt—and the difference between the cost to the taxpayer and such fair market value of the stock received was added to the taxpayer's gross income and the tax assessed thereon for the year 1919.

The foregoing, as in fact carried into execution, seems to us to present nothing more than the exercise of a stock subscription privilege. We need not inquire whether a taxable profit would have resulted under section 202 of the Act of 1918 had a first suggested plan been carried out by subscription to the capital stock of two new corporations and their ultimate consolidation with the Old Dominion Oil Company; or if there had been an exchange, as between strangers, of oil leases for capital stock; or if, under the plan as at first proposed, the advances of the stockholders had been repaid in cash. In the last-mentioned event, the original advance might well be considered a loan and the additional stock as in the nature of interest. Such, however, was clearly not the case, as the transaction was ultimately carried out. The course finally pursued was in substance and effect but an expedient for obtaining certain oil-producing properties for the Old Dominion Oil Company, stripped, it is true, of some of their productivity, but obtained without impairing the cash position of the purchasing company. Participation was offered to all stockholders alike,

and, whatever the initial plan, the ultimate result was a subscription to the capital stock at 50 per cent. of its par value.

Tax laws should be applied, as equitable principles are applied, with regard to substance rather than to form. U. S. v. Phellis, 257 U. S. 156, 168, 172, 42 S. Ct. 63, 66 L. Ed. 180. Upon the view, just stated, that rights to subscribe were offered, accepted, and carried out, it would not be material whether all stockholders participated; but another aspect brings the same result. Here we have no small syndicate of "insiders," dealing with the company. All stockholders did join and participate; most of them directly, but some by selling their stock, with appurtenant rights, to assignees, who did participate and contribute, and a few by selling their rights only, and thus, through their vendees, joining in the enterprise. No stockholder was hurt; no stockholder complained. Under such circumstances, distinctions between the general body of stockholders, represented by the corporation, and the special body of the same members participating in the new purchase, become fanciful. Whether property received is income depends on the facts under which it was received, not on what the facts might have been under other contingencies. Viewing the whole deal as it was actually carried out, the stockholders ventured a special capital fund for a special speculative purpose; the speculation turned out well; the new property earned $400,-000 in one year; and the company issued stock at par for the new capital then finally received, and, on account of the valuable asset it had acquired, issued $200,000 of new stock, in the nature of a 40 per cent. stock dividend on the old stock. We are of the opinion that a computation of profit or loss should have awaited the final closing of the transaction by disposition or sale of the stock of the taxpayer, thus and otherwise obtained. Cf. U. S. v. Davison, 1 F.(2d) 465 (D. C., Pa.); Teehan v. U. S., 25 F.(2d) 884 (D. C., Mass.); Miles v. Safe Deposit & Trust Co., 259 U. S. 247, 251, 252, 42 S. Ct. 483, 66 L. Ed. 923. Upon this issue the order of the Board of Tax Appeals is reversed.

■ The next point made by petitioner Board is raised also in the Massey Case. In August, 1920, the Old Dominion Oil Company sold all of its assets to the Superior Oil Corporation and went into liquidation. The petitioner, W. E. Massey, and James R. Duffin were appointed liquidating trustees. In 1918 the Old Dominion Oil Company had entered into a contract with one Schroer for the construction of a pipe line between certain points in Kentucky. Schroer was unable to finance his part of the agreement, and it was taken over by the petitioner, Duffin, Massey, and two other officers of the company. The pipe line was constructed upon the joint credit of the Old Dominion Oil Company and the five officers and directors who had taken over the Schroer contract. Presumably this debt was discharged by the profits of operation, leaving the Old Dominion Oil Company as the owner of one-half of the fee and the five officers and directors as the owners of a one-tenth interest each. Upon sale of the properties of the Old Dominion Oil Company, the liquidating trustees received $181,306.60 as purchase price of the pipe line, and said trustees thereupon made distribution of this sum; Board and Massey each claiming and receiving $18,130.-66 as his share of the profits secured from the construction and sale of the pipe line.

The right to this distributive interest was immediately contested by other stockholders, who filed an action to recover it, and this litigation was not finally adjusted until the year 1927, when it was agreed between the parties in interest that the liquidating trustees might retain the distribution made to them, but on condition that they waive and would forego further compensation for their services as liquidating trustees. What disposition was made of the claims against the other three distributees who were not also liquidating trustees does not appear upon the record. Under these circumstances it is claimed by the petitioner that he was charged, as one of the liquidating trustees, with the receipt of the purchase price of this pipe line, and that he was not relieved of his obligation to account for such fund, including the $18,130.66 actually withdrawn by him, until the year 1927, and that this sum should therefore be allocated to income for 1927 rather than 1920.

We are of the opinion that the board was right in allocating this income to the year 1920. That it was actually received during that year is not disputed; nor is it disputed that it was received under a claim of right and as profits to which the petitioner was justly entitled. The only claim made is that the contract whereby petitioner purported to secure his interest in the pipe line was illegal and unenforceable by reason of his position as a director of the Old Dominion Oil Company. In this contention the petitioner of course never acquiesced. The payment was never refunded. Possibly it

might have been recovered in the litigation which was instituted for that purpose, but it was not, and it is at least unusual that a taxpayer should be heard to assert the possibility of an adjudication of alleged misconduct and breach of trust, as relieving him from tax liability which is predicated upon the assumption of the honesty and legality of his acts. Obviously, the sum involved must be considered as income either for the year 1920 or 1927, and we think that it must be allocated to the year 1920, in which it was actually received, rather than to the year 1927, in which the taxpayer's right to retain it was established.

Holbrook v. Moore, 293 F. 264 (D. C., Mo.), is not inconsistent with this position. In that case the amounts withdrawn during the years prior to 1913 were pure overdrafts, and were not received under any claim of right. When a portion of this amount was subsequently allowed to the taxpayer, by order of the board of directors, in 1913, the sum so allowed became income as and for that year. It was not received as income before 1913 and the fact that it was then applied in satisfaction of prior overdrafts was immaterial.

The petitioner Board also raises the questions of the validity of the waiver executed by him December 3, 1925, on the ground that this waiver was not signed by the Commissioner, and of the right or propriety of assessing a negligence penalty against him for the year 1920 because of failure of the taxpayer to include $5,000 paid him as salary as president of the Ohio Refining Company and $6,000 paid as salary by the Old Dominion Oil Company in his tax return for that year.

██ The record is wholly devoid of evidence upon which to substantiate a claim that the waiver was not executed by the Commissioner himself or by one duly authorized to act in that behalf. The execution of the waiver by the Commissioner is a purely ministerial act, and it is not clear why signature by a duly authorized deputy is not sufficient. Statutes of limitation must be strictly construed in favor of the sovereign. Compare The Confiscation Cases, 20 Wall. 92, 111, 22 L. Ed. 320; Loewer Realty Co. v. Anderson, 31 F.(2d) 268 (C. C. A. 2). Having been signed by the petitioner and acted upon by the Commissioner, and bearing his signature either in person or by one presumably authorized to affix it, "it would be unconscionable to allow the taxpayer to afterwards repudiate a consent upon which the Commis-

sioner had acted and relied." Liberty Baking Co. v. Heiner, 37 F.(2d) 703, 704 (C. C. A. 3). See, also, Greylock Mills v. Commissioner, 31 F.(2d) 655 (C. C. A. 2).

██ The assessment of a negligence penalty is a purely administrative act dependent upon a finding of the existence of negligence. Whether an assessment based upon such finding falls within the doctrine that the assessment is prima facie correct (Wickwire v. Reinecke, 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184; Austin Co. v. Commissioner, 35 F.[2d] 910 [C. C. A. 6]; Hitchcock v. Commissioner, 44 F.[2d] 756 [C. C. A. 6]), or whether the taxpayer has the burden of showing that the finding was wrong (Niles Bement Pond Co. v. U. S., 281 U. S. 357, 361, 50 S. Ct. 251, 74 L. Ed. 901), need not be decided. Upon a consideration of the evidence we can attribute the omission of certain items of income only to negligence, and such finding was proper. The order of the Board of Tax Appeals both upon the validity of the waiver and the legality of the imposition of a negligence penalty, is affirmed.

For the reasons above stated, this cause is remanded to the Board of Tax Appeals for redetermination of the tax upon principles consistent with the foregoing opinion.