CLYDE SYLVAN STRAW, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Straw v. Commissioner
Docket No. 16879-80
United States Tax Court
T.C. Memo 1983-641; 1983 Tax Ct. Memo LEXIS 149; 47 T.C.M. (CCH) 114; T.C.M. (RIA) 83641; October 17, 1983. Clyde Sylvan Straw, pro se. Gary Kirschenbaum, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Chief Judge: This case was assigned to and heard by Special Trial Judge Fred R. Tansill, pursuant *155 to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE TRANSILL, Special Trial Judge: The respondent issued a statutory notice dated May 16, 1980 addressed to petitioner residing on East 79th Street in New York City, New York. As set forth in the statutory notice, deficiencies and various additions to tax were determined as follows: Additions to Tax
Sec. 6651(a)
Sec. 6653(a)
Sec. 6654(a)
Year Ended
Deficiency
Delinquency
Negligence
Estimated Tax: 12/31/72
$ 4,062.18
$ 273.98
$ 203.11
$11.33
12/31/73
4,790.14
350.00
239.51
17.68
12/31/74
4,572.26
201.99
228.61
12/31/75
4,680.00
163.92
234.00
12/31/76
5,114.00
191.56
255.70
12/31/77
5,421.18
218.87
271.06
Totals
$28,639.76
$1,400.32
$1,431.99
$29.01
*156 At the time of filing the original petition (a hand-written letter), petitioner showed as an address a P.O. box at Grand Central Station in New York City, New York. That letter (treated as a petition) was dated August 11, 1980 and received by this Court on August 15, 1980. Because the letter did not comply with the Rules of this Court as to form and content and because no filing fee was received, the Court ordered, on September 5, 1980, the filing of a proper amended petition and payment of the $10 filing fee by November 5, 1980, otherwise the case would be dismissed and a decision would be entered for the full deficiencies determined by the respondent. On November 5, 1980 petitioner filed a more formal, handwritten amended petition with this Court and paid the filing fee. His legal residence at that time was shown as Jamaica, New York. In the amended petition, which was only a skeleton and not very informative, petitioner challenged the non-allowance of exemptions and deductions in the statutory notice and also objected to the imposition of any additions to tax; he also asserted that neither his wife nor son were reflected in the tax computations and that business expenses *157 and medical expenses were not included; after stating that "Much too much money has all ready [sic] been paid to the I.R.S. as deducted from my Bd. of Education earnings," he concluded that "Probably the I.R.S. owes the petitioner money." The petition also stated that "The return for the periods here involved were not filed." The respondent filed an answer to the petition, as amended, in which the last statement was admitted and other facts and allegations were denied. Thus, this case has its genesis in the fact that no income tax returns for any of the taxable years were filed by petitioner. The prose appearance by petitioner, not a lawyer, has added a note of confusion. After the trial was concluded, respondent filed an amendment to answer (which the Court has deemed denied even though the petitioner filed no reply - see Rule 37(b)) which alleged increased deficiencies and increased additions to tax, based upon petitioner's testimony and to conform the pleading to the proof, as follows: Deficiencies
Additions to Tax
Sec.
Sec.
Sec.
Year
Tax
6651(a)
6653(a)
6654(a)
1972
$ 4,730.37
$ 441.03
$ 236.52
$32.64
1973
5,555.00
541.21
277.75
42.06
1974
5,321.57
389.31
266.08
1975
5,439.24
353.71
271.96
1976
5,901.00
388.31
295.05
1977
5,862.18
329.11
293.11
Totals
$32,809.36
$2,442.68
$1,640.47
$74.70
*158 We will treat all issues presented at trial as properly pleaded since both parties so treated them. The respondent's amendment to answer also denied any entitlement by petitioner to overpayments for any of the taxable years, based on the argument that the statute of limitations under section 6511(a) bars all such claims. The Court recognizes that respondent has the burden of proof and no presumption of correctness as to the new matters affirmatively raised in his amendment to answer which increase the deficiencies. Tax Court Rules of Practice and Procedure, Rule 142(a). From the amendment to answer, it appears that petitioner's income in the statutory notice was based upon W-2 forms obtained from petitioner's employer; the amendment to answer alleges that the increases in income sought in each taxable year are based on petitioner's testimony that he also received rent of $660, interest of $180 and receipts from piano and tennis lessons of $800 or a total of $1,760 in each year. A number of issues are presented. During trial petitioner, sometimes by implication and other times explicitly orally raised various other issues and contentions which the Court regards as issues *159 to be determined, all of which are deemed denied by the respondent. From that source and as set forth in the statutory notice, the petition, the amended petition, the answer and the amendment to answer, the following issues have emerged: (1) Whether the petitioner reported all of his earnings on income tax returns filed for the taxable years 1972 through 1977, inclusive; (2) whether an addition to tax of 25 percent should be imposed for the non-filing of petitioner's United States individual income tax returns for each of the years 1972 through 1977, both inclusive, under section 6651(a); (3) whether there was an underpayment of tax under section 6653(a) whereby the petitioner negligently or intentionally disregarded certain Internal Revenue Service rules and regulations, thus incurring a 5 percent addition to tax; (4) whether an addition to tax under section 6654(a) for an underpayment of estimated tax should be imposed for each of the years 1972 and 1973; (5) whether petitioner is entitled to an overpayment of any Federal income taxes for any of the years here involved; (6) whether the petitioner is entitled to a joint-return filing status in any year; (7) whether the petitioner *160 is entitled to deduct the costs of an apartment allegedly maintained during all the taxable years for business purposes; (8) whether petitioner is entitled to casualty loss deductions under section 165(c)(3) in any year for (a) roof of a barn allegedly storm-destroyed (b) three cars allegedly stolen and (c) an alleged theft of $1,000 in cash; (9) whether petitioner is entitled to interest expense deductions under section 163(a) on debts allegedly incurred; (10) whether petitioner is entitled to medical expense deductions under section 213(a) allegedly incurred in the taxable years; (11) whether petitioner is entitled to travel expense deductions under section 162(a)(2) allegedly incurred in connection with petitioner's sales efforts for Straw Enterprises during the taxable years; (12) whether petitioner is entitled to deductions under section 164(a) for taxes in any taxable year; (13) whether petitioner is entitled to claim an exemption for his son as a dependent in any taxable year under section 151 and section 152; (14) whether petitioner is entitled to child care credits under section 44A or deductions under section 214 [3] in any taxable year; and (15) whether petitioner is entitled *161 to an alimony deduction under section 215 in any taxable year. In order to simplify the presentation of the Court's opinion, the findings of fact and discussions of law for each issue are combined. 1. Were All of Petitioner's Earnings Reported for 1972 through 1977?
Respondent has determined in the statutory notice that petitioner failed to report his earnings for any of the taxable years through failure to file Federal income tax returns for such years. In both the amended petition and in the stipulation of facts petitioner concedes that he did not file any such returns and we so find. The statutory notice tabulates the following list of taxable earnings consisting of teachers' wages received from the City of New York: 1972
$17,063.27
1973
18,835.56
1974
18,326.82
1975
18,954.97
1976
20,217.50
1977
20,985.96
During the course of the trial petitioner testified that he had other unreported earnings for the taxable *162 years including amounts received for teaching music, teaching tennis, and rent from leased property. Respondent's amended answer addressed this additional income. We must conclude, therefore, that petitioner did not report his earnings for any of the taxable years, and that respondent has carried his burden of proof regarding petitioner's receipt of and failure to report this additional $1,760 of income in each year. Respondent is sustained on this issue. 2. Addition to Tax for Non-filing of Returns under Section 6651(a).
Issue 1 above finds that no income tax returns were filed by petitioner for any of the taxable years 1972 through 1977, both inclusive. This issue addresses the question of the implications of such non-filing of returns. Section 6651(a)(1) in material part states: (a) Addition to the Tax.--In case of failure-- (1) to file any return required under authority of subchapter A of chapter 61 * * * on the date prescribed therefor * * *, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to *163 the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; * * * Our inquiry thus must focus upon the question of whether it fairly can be said that the admitted failure to file returns in the present instances was "due to reasonable cause and not due to willful neglect." The burden of providing reasonable cause is generally on a taxpayer and the mere showing of an absence of willful neglect will not suffice; taxpayer must also show presence of reasonable cause. Lee v. Commissioner,227 F.2d 181 (5th Cir. 1955), cert. denied 351 U.S. 982 (1956); Bebb v. Commissioner,36 T.C. 170 (1961). See West Virginia Steel Corp. v. commissioner,34 T.C. 851 (1960); Springfield Concrete Construction Co., inc. v. United States, an unreported case (E.D. Va. 1981), 48 AFTR2d 81-5219. Neglect is *164 willful when it is intentional. There is no question here but that the non-filing of returns was deliberate and intentional on the part of petitioner. The only attempted explanation was that petitioner believed that the amounts of taxes withheld from his wages by the New York City School Administration made filing of a tax return unnecessary inasmuch as he believed this amounted to an overpayment of his tax liability. This explanation has been held ineffective and the addition was imposed in Krassner v. Commissioner,T.C. Memo. 1974-223, Bell v. Commissioner,T.C. Memo, 1980-467, where petitioner did not further explain his failure to file a tax return. We believe that there is here a clearly demonstrated lack of prudence by petitioner despite his obvious educational and intellectual qualifications. Petitioner was a licensed teacher in the New York City Public High School System authorized to teach chemistry and physics. He held a secondary license to teach music at the high school level. He had a bachelor's degree from City College of New York and held a master's degree in Physics from Hunter College. In addition to some time spent in *165 a pre-medical course, petitioner had been teaching both full-time and part-time in the New York School System since 1972. At one point he was married to a school teacher also employed by the New York School System. In prior years he had filed tax returns. Petitioner was an obviously intelligent and well-informed person. The record here is bare of any clear evidence of reasonable cause and we are required, therefore, to conclude that it was only willful neglect that motivated petitioner in the non-filing of all the tax returns for the tax years here involved. On this issue, and finding that respondent has carried his burden with respect to the additional amounts asserted in the amendment to answer, we hold for the respondent. 3. Was There an Underpayment of Tax Under Section 6653(a)?
"Failure to Pay Tax" in section 6653(a) deals, with "Negligence or Intentional Disregard of Rules and Regulations with Respect to Income * * * Taxes." The subsection goes on to impose an addition to the tax in an amount equal to 5 percent of the underpayment. Much of what was said with respect *166 to the immediately preceding issue is relevant here as well. The test to be considered is whether petitioner's conduct constitutes "due care" under the circumstances. See Romine v. Commissioner,25 T.C. 859 (1956). By not filing a tax return in any of the years petitioner thereby failed to report interest income, rental income, business income, wages earned and income from several other peripheral activities. It can scarcely be asserted that failing to remember that such income must be reported demonstrates exercise of due care. Where obvious income items are not reported it is well-established that the addition here involved, the so-called negligence addition, must be imposed. See Anderle v. Commissioner, a memorandum decision of this Court dated September 28, 1951; Board v. Commissioner,51 F.2d 73 (6th Cir. 1931), cert. denied 284 U.S. 658 (1931). In Hasson v. Commissioner,239 F.2d 778 (6th Cir. 1956), affirming T.C. Memo. 1955-121, the Court by way of illustration upheld the imposition of the negligence addition where a taxpayer's income from sources other than the main source of income was *167 not fully reported and adequately reflected in his record books. Here the negligence addition is also asserted for another reason equally valid. While petitioner asserted that he was engaged in various businesses including teaching tennis, teaching piano, renting real estate and photography, he conceded that he kept no records or books for any of these activities even though he was claiming deductions for expense allegedly incurred in some of these activities. Imposition of the negligence addition for failure to maintain adequate books and records has long been sustained by this Court. See Gold v. Commissioner,T.C. Memo. 1981-464; Proctor v. Commissioner,T.C. Memo. 1981-436; and Irby v. Commissioner,T.C. Memo. 1981-399. For all of the reasons set forth, and finding that respondent has carried his burden as to the increases he has asserted, we hold for the respondent on this issue and sanction the imposition of the negligence addition. In passing, we note the propriety of imposing both additions to tax under section 6653(a) as *168 well as section 6651(a). See Robinson's Dairy, Inc. v. Commissioner,35 T.C. 601 (1961), affd. 302 F.2d 42 (10th Cir. 1962). 4. Is an Addition to Tax Under Section 6654(a) Appropriate?
Section 6015 (a)(2) requires that an individual makes a declaration of his estimated tax for a taxable year if "the gross income can reasonably be expected to include more than $500 from sources other than wages * * *." Here, petitioner failed to make a declaration of his estimated income tax for 1972 and 1973. Petitioner's own testimony demonstrates that he could reasonably have expected to have earned more than $500 from sources outside of his wages, inasmuch as he was instructing tennis, teaching piano and receiving rental income.
Section 6654(a) imposes a mandatory addition for an underpayment of estimated income tax where for instance no return is filed and no declaration is filed. Kindred v. Commissioner,669 F.2d 400 (6th Cir. 1982), affirming *169 T.C. Memo. 1979-457. At trial, petitioner made no attempt to explain why he should not be required to have declared his estimated income for the years in question.We note that an addition to tax for failure to pay estimated tax must be imposed inasmuch as those provisions are mandatory and there is no provision comparable to those just discussed where extenuating circumstances deemed to be reasonable cause may be relied on by a taxpayer. Any extenuating circumstances are simply irrelevant here. Estate of Roe v. Commissioner,36 T.C. 939, 952 (1961). We hold for respondent on this issue. 5. Petitioner's Entitlement to Credit or Overpayments.
Both during the course of trial and in the pleadings petitioner has referred to his belief that he may have overpaid his taxes for all of the years before the Court. There can be no doubt as to the propriety of advancing such a claim before this Court. Where the taxable years are otherwise under consideration this Court has the jurisdiction and power to determine an overpayment. Section 6512(b)(1). Unfortunately, however, a number of preconditions must be considered before we can grapple with the *170 merits of such a contention. See section 6512(b)(2). Without ever reaching the merits of the asserted overpayment by petitioner, respondent argues that even if there is some valid claim to an overpayment (which respondent denies and no formal claim for credit or refund was ever filed) it would in any event be foreclosed and barred by the statutes of limitations applicable thereto. Respondent cites us to section 6511(a) which, in effect, provides that a claim for credit or refund of an overpayment of any tax, with respect to which the taxpayer is required to file a return (the situation here), shall be filed by the taxpayer within three years from the time the return was filed or two years from the time the tax was paid, whichever expires later; if no return was filed, then the time limit is two years from the time the tax was paid. Thus, we reach the question of when were taxes paid (if any were, in fact, paid) for the years here involved, in view of the fact that no returns were filed for any of the years. However, taxes were withheld on petitioner's wages from the New York City Board *171 of Education in each year." [4]
Section 6513(b)(1) effectively provides that a tax actually deducted and withheld at the source during any calendar year, in respect to the recipient of the income, is deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year. Because petitioner never filed tax tax returns for the years 1972 through 1977, the statute of limitations for claiming a credit or refund would in each year expire two years after the time the taxes were "paid." Referring only to the wages from teaching upon which withholding taxes were made, the taxes for each such year would have been "paid" by April 15th of the following calendar year and the statute would run two years later. The sequel here is that the statute of limitations has expired for all the taxable years in issue. On April 15, 1980 the statute tolled for the latest year here involved, 1977. For that year the taxes withheld were paid April 15, 1978 and two years later is April 15, 1980. In this connection *172 we note that the statutory notice of deficiency was mailed to petitioner on May 16, 1980 and, therefore, under Code section 6512(b)(2)(B) a claim for credit or refund filed on the date of mailing of the statutory notice would have been untimely. For the reasons set forth above we hold for the respondent on this issue. The statute of limitations bars credits or refunds for all taxable years regardless of their merits. [5]
6. Is Petitioner Entitled to a Joint Return Filing Status?
As noted above, petitioner filed no tax returns of any kind for any of the taxable years 1972 through 1977, inclusively. In computing petitioner's tax liabilities for the taxable years set forth in the statutory notice, the respondent basically used the income reflected on data obtained from the Board of Education in New York City. These represented petitioner's salary receipts *173 as a high school teacher during each of the taxable years. No other income sources had been identified or included in the tax liability recomputation. In that process the respondent utilized a single filing status rate with no dependents. At trial petitioner challenged the use of the single rate filing status as well as the exemption issue with is dealt with separately below. With some inconsistency petitioner has asserted his right to a joint return filing status even though divorced in 1975.
For the rates applicable to married persons filing joint returns to apply, it is essential that there be a timely filing of a joint return.Under Code section 6013, a husband and wife who are married on the last day of a taxable year have the right to elect a joint filing where both husband and wife appropriately sign the joint return. But this election to file jointly may not be made "after there has been mailed to either spouse, with respect to such taxable year, a notice of deficiency under section 6212, if the spouse, as to such notice, files a petition with the Tax Court within the time prescribed *174 in section 6213." See section 6013(b)(2)(C). The terms of subdivision (C) above quoted are met here. A notice of deficiency was issued to petitioner who filed a petition with this Court. Petitioner may not now make an election to file jointly. Further, there is some question of fact as to the petitioner's marital status at the end of each of the taxable years here involved due to a conflict in his testimony in that regard. Still the fact remains that not having filed any returns petitioner cannot be heard at this time to claim a right to make an election which is now specifically foreclosed by the Code. We hold for respondent. 7. May Petitioner Deduct the Costs of an Apartment Allegedly Maintained During the Taxable Years for Business Purposes?
This controversy involves an apartment at 508 East 79th Street, New York City, New York in which petitioner insists he maintained an office. The apartment had three rooms, a kitchen, living room and bedroom. The kitchen was fully equipped and petitioner cooked there at times. The living room was furnished with a Castro-Convertible couch which opened into a bed and it had a television set and a piano. The bedroom was *175 furnished with file cabinets, desks and chairs. Petitioner's wife also contributed along with petitioner to the payment of rent for this apartment in some years. How much was paid by petitioner is unknown. The parties have stipulated and substantiated the following rental payments made for the years indicated as follows: Year
Rent
1972
$415.41
1973
1,680.00
1974
1975
2,055.00
1976
2,090.90
1977
2,241.60
This apartment was subject to the New York State rent control law and over the years the rents increased slightly but were always subject to a ceiling amount. It is petitioner's contention that he used this apartment as a base for various "businesses" including teaching, piano instruction, photography production, and for Straw Enterprises. During some taxable years petitioners and his wife maintained other living facilities, in Jamaica and elsewhere. He also had a piano in his Queens apartment during the other years. He denies living in the apartment, though he occasionally permitted guests to stay there. Petitioner claims to have been divorced from his wife in 1975 and where she resided thereafter is not apparent in this record. Other than the *176 rental amounts referred to above, petitioner could not recall any other specific expenses of maintaining the apartment on 79th Street. While petitioner testified that he did not live in the 79th Street apartment, it is obvious that the facilities there were adequate for that purpose. In fact, respondent argues that the apartment must have been used as a home as well as an office. There are several possible theories which could support petitioner: A business expense under section 162(a); for the production of income under section 212(1) or (2); or as a home-office under section 280A. So far as sections 162 and 212 are concerned, there is a dearth of specific information about the use of the apartment. While petitioner conceded that it was not used for teaching tennis, it is certainly possible that piano teaching was conducted in this facility. It is possible that some aspects of petitioner's photograph activity might have been conducted in the apartment but there was no testimony indicating the presence of darkroom facilities or photographic equipment or supplies. Petitioner spent approximately two hours a day in school actually teaching and other hours each day in various *177 school-related activities. It is possible that he used the apartment at times for the preparation of courses, teaching, grading papers, etc. Nonetheless, petitioner could testify but vaguely about occasional uses of the apartment. He has totally failed to carry his burden of proving that the cost of an additional apartment in New York City was an "ordinary and necessary" expense during the years in question. It is likely that after petitioner became estranged from his wife and divorced from her around 1975 he may have used the apartment as a home as well as an office. There is also a reference in the record of the possibility that petitioner spent some time and effort in the apartment on behalf of the business of Straw Enterprises. This was related to an effort to print and sell some books containing information with respect to Black musical history in the United States, apparently written by petitioner's mother. But again the record is bare of any specific substantiation for that kind of activity. As an office in the home is possible under section 280A, some rather strict requirements have been spelled out, including: That a room in the apartment is used exclusively for *178 business, on a regular basis, that the room was his principal place of business or, in the event it was used by petitioner in his capacity as an employee, it was used for the convenience of his employer. Because of the vagueness of his testimony, petitioner has failed to show that the apartment was the "principal place" of any business, or that he "regularly" received students or clients there. That is really dispositive of the situation under section 280A. For the reasons set forth above we are unable to make any findings which would justify a trade or business expense allocated to the apartment under sections 162(a), 212(1) or (2), or 280A. 8. Is Petitioner Entitled to Casualty or Theft losses in Any Year?
Code section 165(a) authorizes a deduction for a loss sustained during the taxable year not compensated for by insurance or otherwise. Subsection (c) spells out the permissible losses to be allowed to individuals and in (c)(3) authorizes a deduction for losses of property where "such" losses arise from fire, storm, shipwreck or other casualty or from theft." Petitioner *179 has claimed five such losses on his own behalf including (a) destruction of the roof of a barn in a storm (b) three theft losses of three automobiles and (c) a theft loss of $1,000 in cash. The general rule for determining a casualty or theft loss deduction requires a comparison between the adjusted basis of a property destroyed or stolen and the reduction of fair market value inherent in the loss (determined by comparing the fair market value of the property before the loss minus the fair market value of the property after the loss) and then deducting the lower of the two. See sec. 1.165-7(b)(1), Income Tax Regs.
In summary, to obtain a deduction for a casualty or theft loss one must identify the loss, show the year in which the loss occurred, the adjusted cost basis and loss of fair market value for each of the properties, and must show that it was not "compensated for by insurance or otherwise." Only after all these conditions have been satisfied can a taxpayer be said to have sustained a deductible casualty or theft loss. Here, virtually all of the essential *180 elements for deduction are missing. Petitioner was not sure of the year in which any of the losses occurred nor was he able to prove the adjusted cost or loss of fair market value for any of the items. Nor was there any attempt to prove the actual occurrence of specific casualties or thefts by other than petitioner's rather vague testimony. It is also to be noted that in the case of casualty or theft losses, only losses in excess of $100 are permitted. Here, three of the automobiles described were of such an age that the likelihood of their having any value in excess of $100 is problematical. Petitioner thought he paid $200 apiece for two of the cars and one of the others may actually have been titled to his mother. This kind of proof is totally inadequate for the purpose of establishing a loss deduction in this Court. With respect to the $1,000 cash theft loss referred to, not only was the year of occurrence in doubt but there was no attempt to prove that such a loss occurred by producing a police report or some other significant evidence to prove the fact. For all of the foregoing reasons we must reject petitioner's claims for casualty and theft losses. 9. What *181 is Petitioner's Entitlement to Interest Deductions During the Taxable Years?
Petitioner has claimed two different interest items as expenses identified only vaguely as (1) interest on a mortgage on a house in upstate New York and (2) on a sum of money he "borrowed from himself." Section 163(a) provides for an allowance of a deduction for interest "paid or accrued within the taxable year on indebtedness." It was petitioner's testimony that he had purchased a farm in Prairyville, New York for approximately $11,800. The year of purchase was unclear and petitioner was not sure whether his wife's name was on the title to the property. He was also unsure as to the amount of mortgage payments that could be attributed to interest although he did recall that monthly payments were $78. Instruments to show the purchase of the property or the amount and terms of the mortgage were not in the record. With respect to the loan petitioner allegedly made to himself, petitioner was unclear as to the mechanics of this process. The amount of the debt and its terms and the "interest" paid was unknown. *182 It was stated also that petitioner had defaulted on this loan. Because petitioner was on a cash basis, he is required to show actual payment of interest on debts and this he has completely failed to do. He has further failed to, and it is not believed petitioner can, show the existence of a bona fide indebtedness for the money he purportedly "borrowed from himself." We must hold, therefore, that petitioner is not entitled to any interest deductions. 10. Is Petitioner Entitled to Medical Expense Deductions in the Taxable Years?
Section 213(a)(1) allows a deduction for amounts of expenses paid during the taxable year for medical care for the taxpayer, spouse and dependents which exceed certain percentage limitations of adjusted gross income and are not compensated for by insurance. Once again petitioner has failed to meet his burden of proof of claimed expenses. Petitioner did testify that he had a son born prematurely in 1968 who was "sickly" and that due to his condition special breathing equipment was necessary and purchased. The equipment was purchased before *183 1972, our first taxable year and petitioner was unable to recall the purchase price.It also seems clear that some of petitioner's claimed medical expenses were paid to a collection agency but neither the amount, the purpose nor the year of payment were established. We conclude, therefore, that petitioner has failed to carry his burden of proof here with respect to medical expense deductions. 11. Is Petitioner Entitled to Travel Expense Deductions in the Taxable Years?
Certain travel expenses can be valid deductions under section 162 or section 212 of the Code. However, section 274(d) of the code imposes an additional and stringent limitation on such deductions.It requires that the amount, time, place and nature of the expenditure be demonstrated by adequate records or evidence corroborating petitioner's testimony. It is necessary to show the dates of departure, the dates of return, destination or locale of the travel and the reason for or benefit derived from the travel. Treasury Regs. section 1.274-5(b)(2). Petitioner has totally failed *184 to meet the requirements of section 274(d) and the regulations thereunder. Petitioner by his own admission did not keep adequate records, produced no receipts and even was unable to identify where the expenses were allegedly incurred. Moreover, his testimony indicated that he tended to combine business travel with pleasure travel and no attempt was made to allocate costs between them. In short, petitioner has failed to demonstrate any travel expenses incident to the sales position he held with Straw Enterprises in connection with the sale of books. We must, therefore, deny any travel expense deduction to petitioner. 12. Whether Petitioner May Deduct any Taxes [5] Imposed on Him Under Section 164(a). At the conclusion of the trial of this case, the record was kept open for 30 days to permit the parties to submit any supplemental stipulations *185 of facts they could reach with respect to any of the issues involved. Within the appropriate time frame a supplemental stipulation of facts was submitted and received as part of the record. In that stipulation appears the parties' agreement that petitioner and his wife paid real estate property taxes for the Prairyville, New York property as follows: Year
Amount
1975
$281.13
1976
246.63
1977
258.58
Because there is inadequate proof of the petitioner's share of these payments, we will attribute to him only one-half of the totals paid above.
Section 164(a) permits a deduction for real property taxes paid during the taxable year. There is no controversy about the fact that the just stated amounts of real property taxes were paid and, one-half, therefore, is properly allowable as a petitioner's deduction in each year.
Section 164(a)(3) also permits deductions for state and local income taxes. From the various forms W-2 in the record for each year we are able to determine *186 the following amounts of such taxes for petitioner: Year
NY State Income Tax
NY City Income Tax
1972
$675.40
$227.68
1973
843.17
273.41
1974
946.09
295.25
1975
1,085.09
321.92
1976
1,207.05
417.14
1977
1,250.40
442.19
These amounts are properly allowable as itemized tax deductions in the years indicated for the petitioner. 13. Is Petitioner Entitled to Claim His Son as His Dependent in any Taxable Year?
A son of a taxpayer can be a dependent, as defined in section 152, if over half of the support of the dependent is received from the taxpayer. Our problem here involves two different periods based upon petitioner's marital status. From 1972 until 1975 petitioner apparently was married and from 1975 through 1977 he apparently was divorced from his wife. Petitioner testified that his wife worked during all the years in question and that her income as a teacher in the New York City School System was, at the time of divorce, about $11,000 per year. Petitioner also testified that he had two apartments being maintained on his salary before 1975. He failed to introduce any evidence to establish that he provided more than one-half *187 of the support for his child during 1972 through 1975. In short, he has not met his burden of proof as to providing more than one-half of his son's support before the divorce. For the years subsequent to the divorce in 1975, section 152(e)(2) provides the test for the child of divorced parents where the non-custodial parent (petitioner here) is claiming the exemptions. It is clear that the child remained in the custody of his mother during the period subsequent to divorce. The decree of divorce between petitioner and his wife was not in the record and it is, therefore, impossible to determine whether it provided anything with respect to who would be entitled to claim the dependency exemption. Whether the ex-wife claimed her son as a dependent is not known. Thus it is necessary under the facts herein that the non-custodial parent (petitioner here) must provide at least $1,200 or more for the support of the child in each year after the divorce. Section 152(e)(2)(B)(i). Petitioner has made no proof of any support payments and for that reason alone has failed to prove that he is entitled to dependency exemptions for his son in 1975, 1976 and 1977. For the reasons given we hold that *188 petitioner is not entitled to dependency exemptions for his son in any taxable year. 14. Is Petitioner Entitled to Child Care Deductions or Credits for any of the Taxable Years?
From 1972 through 1975 Code section 214, [7] was the pertinent section. Effectively, it provided that where an individual maintained a household including a qualifying individual (the son in this case), there shall be allowed a deduction for employment-related expenses, referring to amounts paid to enable a taxpayer to be gainfully employed. The section requires that married couples must file a joint return to be entitled to such an expense deduction. Here, in 1972, 1973 and 1974 a joint return was not filed because petitioner filed none during those years and for 1975 where petitioner was not married on the last day of that year. From 1972 through 1975 the requirement of joint returns was not met. Thus, for none of those years is there an appropriate deduction for child care expense. In 1976 new Code provision 44A is applicable. Here the basic difficulty is that it would only be the wife who was the head of the household with custody of the child that *189 would be entitled to deduct child care expenses if she met the other requirements of payment. In no event would petitioner be entitled to any such deductions. See Skarbek v. Commissioner,T.C. Memo. 1970-100. Petitioner is not entitled to any child care deductions or credits. 15. Is Petitioner Entitled to a Deduction for Alimony Payments?
Section 215(a) permits a deduction for amounts includable in the gross income of the divorced wife under section 71. To be includable as alimony in her income (and, therefore, deductible from his income under section 215) it must appear that pursuant to a decree of divorce the ex-wife received periodic payments after such decree in discharge of the legal obligation imposed on her former husband under a written instrument incident to the divorce. Petitioner testified that so far as he knew there was no written agreement from which he was obligated to make payments to his wife and, in fact, he testified that he did not pay alimony but rather "supported his family." Petitioner also said that he had never seen the final *190 divorce decree as entered and was unable to produce this document, apparently because of non-payment of legal fees to the attorney involved. Because petitioner did not show that he made payments pursuant to a divorce decree as required by the Code, he fails to meet and carry his burden of proof for entitlement to an alimony deduction. In conclusion, we must point to the repeated failure of petitioner to carry his burden of proof on the issues decided above. He seemed oblivious to the necessity of trying to overcome the respondent's presumption of correctness as to determinations contained in the statutory notice. See Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). For all of the reasons set forth above, Decision will be enteredunderRule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for 1977, unless otherwise indicated. ↩
2. Pursuant to the order of assignment on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. Section 214 was repealed by the Tax Reform Act of 1976, Pub. Law 94-455, 90 Stat. 1520, effective for taxable years beginning after 1975. The Act converted the section 214 deduction to a tax credit under section 44A.↩
4. Such withholding constitutes a "credit." Section 31(a). If such credits exceed the tax imposed, such excess constitutes an "overpayment." Section 6401(b).↩
5. The Court has reason to believe that the respondent may administratively credit the taxes withheld from petitioner's school salary under sec. 31(a) as was apparently done in Baral v. Commissioner,T.C. Memo. 1978-383↩. See 37 TCM at 1572, 47 P-H Memo. T.C. par. 78,383 at 78-1561.
5. A stipulation that petitioner and his wife received a notice of New York school tax for the 1972 - 1973 school year for $115.83 is not meaningful; that is not a deductible tax since it is based upon cost of telephone service rather than the value of real or personal property. N.Y. Tax Law, secs. 801, et seq.↩ (McKinney, 1975).
7. See footnote 3, page 6.↩