J. H. TIPPETT, ADMINISTRATOR OF THE ESTATE OF LAURA TIPPETT, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 46719. Promulgated January 4, 1932.

*C. O. Harris, Esq.*, and *M. E. Sedberry, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

72

OPINION.

BLACK: The issues in this proceeding will be stated and ruled upon in their order.

Issues 1 and 2 will be treated together, and are as follows:

1. That petitioner should not have been proceeded against as administrator, it being averred that prior to the years 1926 and 1927 his administrative duties had been completed, and that the income involved was properly returned by and tax paid by and on behalf of petitioner and his four children as individuals and as tenants in common of the property.

2. That if a fiduciary his relation to the property was "trustee" and not "administrator"; that in connection with his control of the community estate he kept books showing the respective undivided interests of petitioner and his children in the corpus and income of said estate; and that the action of petitioner in reporting one-eighth of the income as distributable and taxable to each of the four children was in effect equivalent to a distribution to each of them of her pro rata share of the corpus and income.

Petitioner further contends that if J. H. Tippett, as such fiduciary, was required to return and pay the tax on said estate, there were four trusts instead of one, and the tax should be calculated upon the interest of each of said Annie, Velma, Homer J. and June Tippett, both as to the normal tax and surtax.

Section 219 of the Revenue Act of 1926 reads:

SEC. 219. (a) The tax imposed by Parts I and II of this title shall apply to the income of estates or of any kind of property held in trust, including—

\*      \*      \*      \*      \*      \*      \*

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; and

\*      \*      \*      \*      \*      \*      \*

(b) Except as otherwise provided in subdivisions (g) and (h), the tax shall be computed upon the net income of the estate or trust, and shall be paid by the fiduciary. The net income of the estate or trust shall be computed in the same manner and on the same basis as provided in section 212, except that [None of the enumerated exceptions apply in the present proceeding].

In this proceeding it appears plain that the community administration has not been closed. Article 3670, Revised Civil Statutes of Texas, reads:

ART. 3670 (3601) (2228) (2173) SURVIVOR SHALL KEEP ACCOUNT—The survivor shall keep a fair and full account and statement of all community debts and expenses paid by him, and of the disposition made of such community property; and, upon *final partition* of said estate, shall account to the legal heirs of the deceased for their interest in such estate, and the increase and profits of the same, after deducting therefrom all community debts, unavoidable losses, necessary and reasonable expenses, and a reasonable commission for the management of the same.

So far as appears from the evidence, the community property of J. H. Tippett and his wife, Laura Tippett, has been held together and managed by the petitioner as a unit just as it was before the death of Laura Tippett. No partition or settlement of any kind up to and including the taxable years in question had been made and there is no evidence of any payments or credits made to any of the children. No guardian of their estate has ever been appointed. It is of course true that upon the death of Laura Tippett, her interest in the community real estate immediately vested in her heirs, who were the minor children, whose names have already been stated in our findings of fact. But that fact does not affect the control of the community administrator or survivor over the property. Until the community administration is closed, the income from the estate would be taxable in the hands of the administrator, the same as any other estate, under section 219, which we have quoted.

We held in the case of *J. R. Brewer, Administrator*, 17 B. T. A. 704, that the survivor of the community in Texas occupies a fiduciary relation thereto until there is a partition or settlement of the estate and that it is immaterial whether he is denominated administrator, executor or survivor of the community, so long as it is clear that the purpose is to tax that part of the community property that belonged to the deceased spouse and which is under his control as a fiduciary. On the authority of that case, we approve the respondent's action in holding that the income from Laura Tippett's half of the community estate is taxable, for 1926 and 1927, as a whole against J. H. Tippett, administrator, subject to proper deductions as prescribed in section 219 of the Revenue Act of 1926.

Petitioner's assignments of error 3 and 4 are as follows:

3. That for the year 1926 the sum of $17,164.23 should have been taxed as capital net gain instead of ordinary income.

4. That for the year 1927 the sum of $114,056.07 should have been taxed as capital net gain instead of ordinary income.

The Texas courts and recently the Court of Appeals for the Fifth Circuit in *Ferguson* v. *Commissioner*, 45 Fed. (2d) 573, and this Board in *W. T. Waggoner Estate*, 24 B. T. A. 711, have held that leases of oil and gas in Texas convey a vested fee title to the oil and gas in place and the cash consideration or bonus received therefor is taxable as a capital gain if the property has been owned and held the required length of time. The leases involved in *W. T. Waggoner Estate, supra,* for which bonuses were received, were in all essential respects the same as the leases involved in the instant case. On issues 3 and 4 petitioner is sustained.

We will next consider petitioner's fifth assignment of error, which is as follows:

5. That $25,970.21, being ¼th of the sum of $103,880.86 collected by J. H. Tippett for oil and gas leases on mineral classified lands and credited to the Laura Tippett Estate, as ordinary income, was funds belonging to the State of Texas and not taxable to J. H. Tippett, as such fiduciary, unless the Supreme Court of Texas overrules the decision (on that point) of *Green* v. *Robison*, 8 S. W. (2) 655.

During 1927 petitioner sold a number of leases on mineral classified lands, viz., lands in which the State of Texas reserved the minerals. These sales were made under what was known as the Relinquishment Act, under which the landowner was constituted the agent of the state to dispose of these mineral rights. The amount received as bonuses from the sale of these leases has been stated in our findings of fact.

In an extended opinion in the case of *Green* v. *Robison*, 8 S. W. (2d) 655; 117 Tex. 533, the Supreme Court of Texas, in passing upon the constitutionality of and construing the Relinquishment Act said:

We think the act, as it says in article 5367, creates the owner of the soil the state's agent for the purposes mentioned therein. For the accomplishment of those purposes, said agent is authorized, " to sell or lease * * * the oil and gas * * * upon such terms and conditions as such owner may deem best, subject only to the provisions " of the act. There is no vesting of title or interest in the oil and gas in the owner of the soil. No rights pass to any one until a sale or lease is effected according to the terms of the act. What is sold, the consideration therefor, the provisions inuring to the benefit of the owner of the soil, what are the proceeds of the sale, and their application, must all be determined from the act.

*       *       *       *       *       *       *

We interpret the act to fix a minimum price of 10 cents per acre per annum and the value of one-sixteenth of the gross production free of cost to the state, for which the state is willing to sell the oil and gas, and the agent is authorized to secure the highest price obtainable for the benefit of the fund to which the land belongs; like amounts received by the state to be paid by the purchaser to the owner of the soil. If a bonus is paid, if a larger royalty or other amounts are contracted for, the state and the owner of the soil receive equally in like amounts.

Subsequent to the sale of the leases of the mineral classified lands involved in this proceeding, the State of Texas instituted an action against J. H. Tippett, individually, and as community survivor of his deceased wife, and the Empire Gas and Fuel Company, lessee, to recover one-half of $16,800 cash bonus and one-half of $1 per acre rental remaining after deducting 10 cents per acre paid the State. The trial court rendered judgment of $8,592, as prayed for, which

on appeal to the Court of Civil Appeals of Texas, at Austin, was affirmed upon the authority of *Green* v. *Robison, supra,* and *Empire Gas & Fuel Co.* v. *State,* 21 S. W. (2d) 376. Petitioner has appealed the decision of the Court of Civil Appeals to the Supreme Court of Texas, and, so far as we have been advised, no final decision by the Supreme Court of Texas has yet been rendered on the appeal.

The last session of the Texas Legislature passed an act for the relief of land holders who had purchased mineral classified land from the State of Texas and were affected by the decision of the Supreme Court of Texas in *Green* v. *Robison, supra.* This act was approved by the Governor on March 13, 1931, and sections 3 and 8 thereof seem clearly to cover petitioner's situation.

In view of the act of the Texas Legislature just cited, and of the fact that there is no evidence to show that petitioner has ever paid over to the State of Texas any of the sums received as bonuses from the sale of mineral classified lands, except the 10 cents per acre called for in the General Leasing Act, and that the evidence does not show that petitioner has ever been sued for an accounting by the State of Texas, except in the one suit of *State of Texas* v. *Empire Gas & Fuel Co. and J. H. Tippett,* already referred to, and that he is contesting his liability in said suit, it is not believed that any of the sums received as bonuses for these mineral classified lands should be excluded from petitioner's gross income. As to these items, petitioner's books were kept on the cash receipts and disbursements basis and the items of income were properly returnable in the years when received. Our decision on this issue is for respondent. Cf. *Ford* v. *Commissioner,* 51 Fed. (2d) 206; *Board* v. *Commissioner,* 51 Fed. (2d) 73.

Petitioner's sixth assignment of error is as follows:

6. That petitioner is entitled to additional depletion on the sum of $1,690.83 reported on Exhibit 2 as income from the sale of oil from producing wells.

The fiduciary return for 1927 on Form 1041 shows that the only item of oil royalties from producing oil wells was $1,690.83, and from this the full depletion allowance of 27½ per cent, amounting to $464.98, was deducted and this deduction respondent has allowed. Petitioner is not entitled to any further deduction on this account.

*Decision will be entered under Rule 50.*