## PEDDER v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6722.

Circuit Court of Appeals, Ninth Circuit.
Sept. 7, 1932.

William S. Bayless, of San Francisco, Cal., for appellant.

G. A. Youngquist, Asst. U. S. Atty. Gen., Sewall Key and Helen R. Carloss, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, and C. E. Lowery, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges, and NORCROSS, District Judge.

WILBUR, Circuit Judge.

Petitioner sought a review of the action of the respondent, Commissioner of Internal Revenue, before the Board of Tax Appeals. He seeks by his petition to review the adverse decision of that Board.

The facts involved were stipulated before the Board of Tax Appeals, and, as we understand the record, the Board found it to be a fact that the income which the petitioner sought to segregate into two equal parts, one-half taxable to his wife and one-half to himself, upon the ground that the property was held by the husband and wife in joint tenancy with the right of survivorship, was in fact community property of the husband and wife, and therefore taxable as income to the husband alone at the time such income was received under the law then applicable.

The stipulation shows that the income in controversy was $20,715.15, which was reported in the separate return of petitioner's wife, Mabel H. Pedder, for the year 1924, as her income, consisting of $3,842.80 dividends received upon corporate stock held in the name of the petitioner, Stanley Pedder, capital net gain of $7,869.88 upon stock similarly held, and $9,002.47 profit on stock and real estate also held in the name of the husband, Stanley Pedder, petitioner herein. The husband kept a record of all the income derived from the above-mentioned sources, crediting the aforementioned one-half thereof to his wife during the year 1924. The petitioner deposited all the income received by him during the year 1924 as the result of his legal practice in accounts which were designated as follows: "Mr. Stanley Pedder & or Mrs. Mabel H. Pedder." These accounts were with the Wells-Fargo Nevada National Bank and the Bank of California National Association. The income collected by him upon the property held in his name was also deposited during the year 1924 in the joint bank accounts above referred to. These bank accounts were subject to the check of either party, and the accounts were active so far as petitioner was concerned, but only occasionally checked upon by petitioner's wife. By stipulation, the testimony given by petitioner in another case pending before the Board of Tax Appeals as to the agreement between himself and wife, was considered by the Board in this case. He testified, in part, as follows:

"Q. As a matter of fact, Mr. Pedder, did you ever have any agreement with Mrs. Pedder, either in writing or oral, that she should have a one-half interest that you conveyed to her by way of gift or otherwise—one-half or any part of these funds? A. No formal agreement, no; it was just my understanding of the situation.

"Q. Well, you kept a card record, I believe? A. I kept the record.

"Q. Did she ever see that? A. I do not suppose she did. * * *

"Q. As a matter of fact, she did not know it existed? A. Yes, she knew it existed.

"Q. Did she know the amounts that were entered on there? A. Probably not.

"Q. What makes you think she knew it existed? A. Well, she knew, of course, that I kept books.

"Q. She did not know anything about bookkeeping herself? A. Oh, no, she is not a business woman at all.

"Q. Did she know there was any amount in these books or cards in her name? A. I do not know.

"Q. It is very probable that she did not, is not that right? A. Very probable, because she knows nothing about bookkeeping."

Petitioner further testified:

That he kept his books in compliance "with my understanding of the situation which I wanted to develop so that whatever happened to me, my wife was a sole surviving owner of the joint tenancy; that has always been my idea; * * *

"Now, again * * * my whole idea in this proposition was that when I earned money it was turned over to joint tenancy, consisting of myself and my wife; the proceeds of that joint tenancy, I would also argue, belonged thereto; if I took anything out of that joint tenancy, it is charged with the trust for my joint tenant. * * *

"Q. This bank account, was it one of these bank accounts that was subject to check by either party, and that the balance may be paid to the survivor in case of death? A. Yes, sir."

The witness admitted that in his income tax return for 1923 the property from which the income in question was derived was designated by him as community investment.

Under the law of California, at the time of the acquisition of the property from which the income here involved was derived, all the property acquired by husband or wife after marriage was presumed to be community property subject to the disposition and control of the husband with all the powers of ownership. The income upon this community property was the income of the husband. United States v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285. In order to overcome the presumption that property acquired by husband or wife after marriage was community property, it was essential to show that the property was acquired by one of the spouses by gift, bequest, devise, or descent. Cal. Civ. Code, §§ 162, 163, 164. This property relationship of the husband and wife could be altered by the parties by a mutual agreement "subject, in transactions between themselves, to the general rules which control the actions of persons occupying the confidential relations with each other." Cal. Civ. Code, § 158. It will be observed that the property from which the income in question was derived was acquired by the husband by reason of services rendered by him as an attorney at law, and was, as such, the community property of the husband and wife,

and that the property at the time of the receipt of the income in question stood in the name of the husband, and, as such, was presumptively community property. Estate of Jolly, 196 Cal. 547, 238 P. 353; Estate of Pepper, 158 Cal. 619, 112 P. 62, 31 L. R. A. (N. S.) 1092; Estate of Hill, 167 Cal. 59, 138 P. 690; Fountain v. Maxim, 210 Cal. 48, 290 P. 576, 577. In the latter case the Supreme Court of California was dealing with the contention that certain property was the separate property of the wife by reason of the fact that it had been acquired in another state. The court said:

"It may also be conceded that personal property acquired in another state under circumstances which make it the separate property of the wife, when brought into this state remains her separate property. Estate of Drishaus, 199 Cal. 369, 249 P. 515. But the property here in question, having been acquired during coverture, and taken in the name of the husband is presumed, under section 164 of the Civil Code, to be community property; and, unless the presumption is successfully controverted by other evidence, the court is bound to find according to the presumption. Freese v. Hibernia S. & L. Soc., 139 Cal. 392, 395, 73 P. 172; Simonton v. Los Angeles T. & S. Bank, 205 Cal. 252, 258, 270 P. 672.

"It has also long been the rule in this state that, where separate and community property are so commingled that it is impossible to trace the funds, the whole will be treated as community property, upon the principle that the burden is upon the party claiming property is separate property to establish its character as such. 5 Cal. Jur. 298, § 16."

The petitioner claims he has overcome this presumption by showing that the funds invested in the property from which the income in question was derived were at one time deposited by him in a joint account in a bank, and that under the law of California such account creates a joint tenancy in the funds with the right of survivorship, and that the funds having thus been impressed with the character of joint tenancy retain that character notwithstanding the fact that they were withdrawn by him and invested in his own name. The petitioner relies largely upon his statement of his intent at the time the deposits were made in the bank and upon the fact that, although he withdrew the funds from the bank and bought property to which he took title in his own name, he nevertheless deposited the income in the same joint account from which the funds had been withdrawn to make the purchase in question. It may be conceded that, where community funds were thus deposited by the husband in a joint bank account, accompanied by an agreement of the parties in writing that the funds were subject to be withdrawn by either party during their joint lives and by the survivor upon the death of one of the spouses, the property was changed from community property to a joint ownership in the nature of a joint tenancy, (Estate of Harris, 169 Cal. 725, 147 P. 967; Kennedy v. McMurray, 169 Cal. 287, 146 P. 647, Ann. Cas. 1916D, 515; McDougald v. Boyd, 172 Cal. 753, 159 P. 168; Estate of Gurnsey, 177 Cal. 211, 170 P. 402), in view of section 15 (a) of the California Bank Act (Stats. and Amendments to the Codes, 1921, p. 1367; Deering's Gen. Laws of California 1923, p. 170, Act 652), which is as follows: "Deposit in name of two depositors. When a deposit shall be made by any person in the names of such depositor and another and in form to be paid to either or the survivor of them, such deposit and any additions thereto made by either of such persons after the making thereof, shall become the property of such persons as joint tenants, and the same together with all dividends thereon shall be held for the exclusive use of such persons and may be paid to either during the lifetime of both or to the survivor after the death of one of them. * * * The making of the deposit in such form shall, in the absence of fraud or undue influence, be conclusive evidence, in any action or proceeding to which either such savings bank or the surviving depositor is a party, of the intention of both depositors to vest title to such deposit and the additions thereto in such survivor."

The record does not show whether or not the deposits in question were made before or after the enactment of this California statute. It is asserted in petitioner's brief, although the record is silent upon the subject, that the account with the Wells-Fargo Nevada National Bank in San Francisco was opened in 1917 and that the account with the Bank of California National Association of San Francisco was opened May 15, 1924. It is also asserted in the brief that the joint agreement with the bank was signed by petitioner and his wife. The written agreement referred to in the brief was not offered in evidence, and, although counsel ask us to assume that such an agreement was executed and that by its terms it created a joint tenancy, the presumptions in favor of the actions of the Board of Tax Appeals would preclude our doing so,

notwithstanding the agreement that the money was deposited in the joint bank account subject to the check of either party, and the testimony of the petitioner that the bank account was subject to the check of either party "and that the balance may be paid to the survivor in case of death."

We think that the evidence in this case did not compel the conclusion by the Board of Tax Appeals that the funds from which the income in question was derived were held by the husband and wife as joint tenants at the time the income was so derived. They were justified in concluding that the presumption of the statute in favor of community property was not overcome. The agreements, if such there were, evidenced by writing made at the time of the deposits in the bank, were not in evidence; consequently the terms thereof were not disclosed. There is no testimony as to the understanding of the husband and wife as to the ownership of funds withdrawn from the joint account. The petitioner himself does not testify that there was any agreement with his wife with relation to funds so withdrawn, nor, in fact, was there any agreement with regard to the establishment of the joint account other than the written agreement, if such existed. Petitioner's conduct is inconsistent with his claim that it was his intention that money withdrawn from the bank account should be impressed with the character of a joint tenancy. He was an attorney at law familiar with the rules of law and able to put his investments in such form that the right of survivorship would be manifest by the muniment of title. It is obvious from his testimony that in the event of his death his wife, who seemed to be wholly ignorant as to the nature of his transaction, would be unable to substantiate the claim that she took as a surviving joint tenant, property which he held in his own name and which was therefore presumptively community property. It is unnecessary for us to determine what interest the other spouse has in funds withdrawn from a joint bank account. That question, so far as we are advised, has not yet been determined by the courts of California and need not be determined by us. We hold simply that under the evidence the decision of the Board of Tax Appeals was justified by the presumption that the property was community property and that the evidence adduced before them was not such as compelled a contrary conclusion. We are bound by their decision upon the facts under these circumstances. Phillips v. Commissioner, 283 U. S. 589, 51 S. Ct. 608, 75 L. Ed. 1289. The fact that the husband deposited the income in question in the same joint account in which the original funds were withdrawn to invest in the property to produce the income is of no significance. The question is as to the status of the income when it was received. Lucas v. Earle, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731.

Order affirmed.