## BELRIDGE OIL CO. v. HELVERING, Commissioner of Internal Revenue.

### No. 7103.

Circuit Court of Appeals, Ninth Circuit.
March 2, 1934.

Claude I. Parker, John B. Milliken, and Bayley Kohlmeier, all of Los Angeles, Cal. (Llewellyn A. Luce, of Washington, D. C., of counsel), for petitioner.

Sewall Key and John MacC. Hudson, Sp. Assts. to Atty. Gen., for respondent.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

### PER CURIAM.

Petitioner seeks a review of a decision of the Board of Tax Appeals with reference to its income tax for the years 1921 to 1923, inclusive. The amount of the deficiency as fixed by the Commissioner of Internal Revenue is $45,293.85, $4,692.89, and $4,684.91, respectively, for the three years. The total deficiency is $54,671.65. It is claimed that the Commissioner erred in eliminating from the invested capital of the petitioner the sum

of $974,955, this amount being claimed to be the excess of the par value of the stock issued in exchange for an option to purchase 30,845.96 acres of land over the $25,000 paid by Messrs. Green, Whittier, and others, the organizers of the corporation, for such option. The petitioner alleged in his petition to the Board of Tax Appeals that: "The land thus acquired under the option, being highly probable oil land, had a then actual cash value of at least $2,056,397.20—that is, a value equal to at least twice the price at which, under the option, it could be purchased. By reason of having secured the option, the corporation was in a position to buy and did buy the entire tract of land for $1,028,198.60. The option then had an actual cash value *to the corporation* at the time it was acquired of not less than $1,028,198.60 and, being tangible property, is properly includable in invested capital in an amount not less than the par value, viz: $999,995.00 of the capital stock specifically issued for it." (Italics ours.)

It will be observed that there was no specific allegation here as to the market value of the option, which for purposes of taxation would be its actual cash value, but it is alleged that the actual cash value *to the corporation* was not less than $1,028,198.60. It is alleged also that the option was procured by Mr. Hole from Mrs. Hopkins after a discovery by the above organizers of the Belridge Oil Company of oil seepages upon the land in question, and that: "As a result of the negotiations which Mr. Hole carried on, Mrs. Hopkins to whom information in respect of the seepage discovery had not been communicated, on January 5, 1911, for a consideration of $25,000 in cash to her paid, entered into an agreement whereby she granted to Messrs. Green, Whittier and their associates an option to purchase 30,845.96 acres of land for a price of $33.33-1/3 per acre."

The option was in fact granted to Mr. Hole and subsequently assigned to Messrs. Green, Whittier, and others.

The ultimate fact involved in the controversy between the Commissioner and the taxpayer was the "actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment." Revenue Act 1921, § 326 (a) (2), 42 Stat. 227, 274. This was clearly stated in the opinion of the Board: "Our sole question for determination is the actual cash value of the option at the time of its payment for the capital stock of petitioner on January 25, 1921."

Notwithstanding this clear conception by the Board of its duty in the premises, it made no express finding of the actual cash value of the option conveyed to the corporation. In the course of the long recital of the probative facts in the "opinion" of the Board of Tax Appeals, it is said that in a previous case (Belridge Oil Co. v. Com'r of Internal Revenue, 11 B. T. A. 127) it had been held by the Board of Tax Appeals "that the option was worth on January 25, 1911, only what was paid for it on January 5 of the same year"; i. e., $25,000.

The "findings of fact" of the Board of Tax Appeals are concerned largely with the recital of probative facts. There is no finding therein of the actual cash value of the option. It is only from the statements in the opinion and from the fact that judgment was entered for the respondent, and from the dissenting opinion which construes the majority opinion as holding that the actual cash value of the option was only $25,000, that the actual cash value of the option is to be inferred.

■■■ It is the duty of the Board of Tax Appeals to find the facts upon which the validity of the proposed deficiency tax depends. Upon the petition to review, we are concerned only with the question as to whether or not the facts found sustain the legal conclusions deduced therefrom. There are some cases in which an inferential finding of the Board of Tax Appeals has been accepted as sufficient finding of the ultimate fact to justify a review of the question, but in the case at bar we are concerned with a difficulty which we have not yet mentioned. It is clear from the opinion of the majority of the Board of Tax Appeals that they entertained the view that the proper basis for fixing the actual cash value of the option was the amount paid for the option in view of the fact that Mrs. Hopkins, who granted the option, must have realized that there was a prospect that oil would be found on the premises and that that was the motive which actuated Mr. Hole in procuring the option. Consequently, it is apparently assumed by the Board of Tax Appeals that the bonus agreed upon by the parties to the option was better evidence of its value than expert testimony as to the value of the oil lands covered by the option, and the inference derived therefrom as to value of the option itself. But it appears from the probative facts contained in the findings of fact by the Board of Tax Appeals that, in addition to the $25,000 paid by

■■■

the assignees of the option, other payments amounting to $160,000 were made by Mr. Hole in order to secure the option. In this connection it should be stated that from the probative facts set out in the opinion it appears that Hole had an option to purchase this land at $20 per acre; that the organizers of the petitioner, having discovered oil seepage on the land, desired an option which would enable them to prospect for oil before they exercised their option to purchase. They were willing to enter into such an option for $33.33⅓ per acre, with the agreement that Hole, who was to secure the option, should get a one-fifth interest in the company to be formed. Hole, without disclosing to the organizers the fact that he had an option for $20 an acre, went about securing the option at $33.33⅓ per acre, which included the privilege of prospecting and developing oil before exercising the option to purchase. Hole did not disclose to the organizers that the purchase price fixed in his option was $20 per acre, nor did the organizers of the company disclose to Hole or to Mrs. Hopkins the fact that they had discovered oil seepages on the land. Green was operating for the organizers of the company.

■ If the sum of $160,000 and one-fourth of his stock in the company was paid by Hole to secure an option which was more favorable in its terms than the one he then held, and if this option so secured by him was turned over to the corporation, the fact that it cost Hole $160,000 was an element to be considered by the Board in arriving at its conclusion as to the cost and as to fair cash value of the option.

■ All that we have said in this matter is for the purpose of emphasizing the fact that there is no direct finding by the Board of Tax Appeals on the ultimate fact involved in the determination of this appeal, and, consequently, that the case must be returned to them for such a finding. We do not wish to be understood as determining whether or not such payment of $160,000 was made nor the circumstances or agreements under which it was made. That question is for the Board. We leave to the Board the question of whether or not it will re-examine the witnesses with reference to this payment of $160,000 and the stock, whether they will proceed to hear new or additional evidence upon the question of value, or will determine the value on the evidence already adduced before them.

The case is remanded to the Board of Tax Appeals with instructions to specifically find

the actual value of the option in question at the time it was transferred to the corporation in consideration for the issuance of its capital stock, namely, on January 25, 1911, and for an ascertainment of the tax upon the value so found by them.