## EATON v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7855.

Circuit Court of Appeals, Ninth Circuit.

Jan. 13, 1935.

Perry W. Shrader, of Kansas City, Mo., and Charles M. Frey, of San Francisco, Cal., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key, John MacC. Hudson, and Berryman Green, Sp. Assts. to Atty. Gen., and E. W. Pavenstedt, of Washington, D. C., for respondent.

Before WILBUR, DENMAN, and HANEY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order of the Board of Tax Appeals affirming the decision of the Commissioner with reference to a deficiency for income tax purposes. The plaintiff claimed a deductible loss for the year 1928 in the amount of $4,537.60, this being his estimate of the value of 3788 apple and pear trees which the petitioner destroyed in 1928, upon three farms having a total acreage of 114.39 acres purchased by him in 1928 at a total cost of $80,800. If this loss was incurred in the *regular* business of the petitioner, it was deductible from his gross income (Revenue Act 1928, § 23 (a), c. 852, 45 Stat. 791 [26 U.S.C.A. § 23 and note]); if a capital loss, it was not. The petitioner contends that the "test of whether or not the loss sustained was a loss or a capital investment is the intention of the taxpayer at the time he bought the property." The respondent states that "for the purpose of argument we may assume as the petitioner contends, that the test of whether or not the loss or expense sustained by removing the trees was a deductible loss or nondeductible capital investment is the intention of the taxpayer at the time he bought the property." Assuming for the moment that this is the factual issue in the case, we have the following complicated findings of the Board of Tax Appeals bearing upon the subject:

"*He purchased the land in question with the expectation of continuing the production and sale of apples therefrom if*

*profit could be realized from such operations.* * * *

"Immediately after the purchase in 1928 the petitioner employed an expert in apple production to make a survey of the orchards. Such expert reported that many of the trees were of varieties the fruit of which could not be profitably marketed on account of competition in other sections where production costs are lower. He also found some trees that were not in good condition. Acting upon this report, the petitioner, late in 1928 and early in 1929, pulled up and removed 3,428 apple and 360 pear trees at a cost of $950.15 for labor. * * * Petitioner planted the ground cleared of trees, as above described in lettuce and since 1929 has been the largest grower thereof in that neighborhood. * * * The petitioner contends that he bought the farms here involved with the intention of continuing the production and marketing of apples therefrom and that it was not for some time after the purchase that he determined that such operations could not be profitably carried on and decided to destroy the trees and use the land for lettuce growing. * * * *It may be true that when petitioner bought the land he intended to continue the orchard business therein if there was any prospect of profit. It is also equally obvious that if profit was not likely he intended to uproot the apple trees and use the ground for the production of lettuce.* Very shortly after the purchase petitioner, on the advice of an expert, began the destruction of the trees. Inasmuch as the evidence shows that petitioner himself had been an apple grower in that neighborhood for about thirty-five years, it is difficult to see just how he learned anything from the report of his expert that he did not already know from his own experience and his knowledge of the land and trees purchased. * * * *The respondent has based his determination on the theory that petitioner bought the land in question for the purpose of growing lettuce thereon* and that if any loss or expense was incurred in the removal of the trees, it must be regarded as capital outlay. The evidence shows that petitioner produced and marketed no apples from the destroyed trees and that in the following year the ground cleared by their removal was planted to lettuce. *In our opinion the evidence adduced by the petitioner is not sufficient to overcome the* presumption of correctness that attaches to the determination of the respondent." (Italics ours.)

It is apparent from a reading of these excerpts from the opinion of the Board of Tax Appeals that it did not expressly find what was the intention of the taxpayer at the time he purchased the apple and pear orchards. It is said that he expected or intended to continue the sale of apples, but this expectation or intention was dependent upon the question of whether or not a profit could be realized and that it was equally apparent that, if he could not derive a profit therefrom, he intended to uproot the trees and use the ground for the production of lettuce. It then stated that the respondent has based his decision on the proposition that the petitioner bought the land for the purpose of growing lettuce thereon. The Board of Tax Appeals seems to feel that the petitioner had the intention of growing apples, but, if he found that this would not be profitable, to grow lettuce instead. But, as stated by counsel, the question was the intention in the mind of the taxpayer at the time he made the purchase. There is no finding of fact upon this issue.

The ultimate question of fact is not the foregoing assumed by the parties to constitute the only issue in the case. It is whether or not the loss resulting from the destruction of the trees was one incurred in petitioner's trade or business. Revenue Act 1928, c. 852, 45 Stat. 791, § 23 (e) (1), 26 U.S.C.A. § 23 and note. The Treasury Regulations No. 74, promulgated under Rev.Act 1928, arts. 172, 173, deals with the question of the removal of buildings and other improvements on real estate with relation to the right of the taxpayer to claim a deduction for the loss resulting from such removal. Article 172 deals with the demolition of buildings and the scrapping of equipment and the purchase of real estate whereon such buildings were located. It is therein provided that, where a taxpayer buys real estate with the intention of destroying a building and erecting another in its place, no deduction should be allowed by reason of the demolition of the old building. Article 173 deals with the destruction of capital assets due to some change in business conditions by which the value of capital assets "is suddenly terminated, so that the taxpayer discontinues the business or discards such

assets permanently." It is apparently the theory of both parties hereto that by analogy, if the taxpayer in the case at bar bought the farms in question with the intention of continuing the business of growing apples and pears and thereafter ascertained that he could not do so with profit, and for that reason destroyed the trees, he is entitled to a deductible loss, whereas, if he intended at the time he made the purchase to uproot the trees and enter upon the business of growing lettuce, the loss was not deductible. While this question of the taxpayer's intent is in the opinion of the parties hereto a vital question of fact, the ultimate fact, as we have said, is whether or not the loss occurred in appellant's trade or business rather than by destruction of his capital assets. There is no finding upon either issue by the Board of Tax Appeals.

We are, in effect, asked to review the testimony and make the necessary findings upon which to base a conclusion of law as to the right of petitioner to deduct the loss which he claims · to have suffered. This we cannot do. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Anderson v. Com'r (C.C.A.9) 78 F.(2d) 636, 637; Belridge Oil Co. v. Helvering (C.C.A.) 69 F.(2d) 432, and Fulton Oil Co. v. Com'r, 81 F.(2d) 330, decided by this court.

We may add that, if the ultimate fact were that of the intention of the taxpayer at the time he purchased the property, and if a finding thereon had been made in favor of the government, it is clear that we could not disregard the finding on the theory that it is not supported on the evidence, for one of respondent's witnesses testified that the taxpayer told him that he bought this land for the production of lettuce. We quote his statement: "He only made this statement, as we were driving around, that it was bought by him for lettuce, as he was the largest producer of lettuce in that district, and that he immediately, as soon as he got possession, put in lettuce, and then I found out there was $17,000 profit on the Railroad ranch [one of the three farms purchased by petitioner, containing 30 acres] in that one year."

The case is remanded to the Board of Tax Appeals for a specific finding on the question of whether or not the loss incurred by the taxpayer was incurred in the course of his trade or business, and in that connection, and in view of the contention of the parties hereto, we direct also that a specific finding be made on the question of whether or not the taxpayer at the time he purchased the land intended to destroy the trees.