## ANDERSON v. COMMISSIONER OF INTERNAL REVENUE
### No. 7307.

Circuit Court of Appeals, Ninth Circuit.
July 1, 1935.

Louis W. Myers and Joseph D. Peeler, both of Los Angeles, Cal., and Ward Loveless, of Washington, D. C., for petitioner.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and John G. Remey, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, Circuit Judge, and NORCROSS, District Judge.

### PER CURIAM.

This is a petition to review a decision of the Board of Tax Appeals with relation to the determination of the deficiencies in the income tax of Stanley S. Anderson for the calendar years 1924 and 1925 in the amounts of $19,036.61 and $9,752.59, respectively. The deficiency was determined by the Commissioner upon the theory that all the property from which the income was derived in the years 1924 and 1925 belonged to the petitioner, Stanley S. Anderson, either as separate or as community property, and that Marguerite, the wife of Stanley S. Anderson, had no interest therein. The petitioner contended before the Board of Tax Appeals that the property from which the income in question was derived was owned by him and his wife, Marguerite, as tenants in common, each owning an undivided one-half interest therein as his or her separate property.

In the findings of fact of the Board of Tax Appeals there is no specific finding as to the nature of the ownership of this property. The nearest approach to such a finding is contained in the conclusion in the majority opinion, as follows: "We are therefore of the opinion that the petitioner has not overcome the presumption of the correctness of the respondent's determination that the income in question for the years 1924 and 1925 was community income taxable to the petitioner." We may infer from this that the Board of Tax Appeals concluded that the income was derived from community property. The dissenting member of the board assumed that this is the effect of the findings and opinion of the majority, and states that in his view he is convinced that a contract existed between the petitioner and his wife as result of which they acquired and held the property as tenants in common, each owning a separate one-half interest therein. The situation here is analogous to that presented to us in Belridge Oil Co. v. Helvering (C. C. A.) 69 F.(2d) 432, wherein the actual cash value of the option which was involved in that case was not directly stated in the findings of fact by the Board of Tax Appeals and is only inferable from the statements in the opinion and from the judgment and from the dissenting opinion, as in this case. We held that the proper course in such a case was to return the case to the Board of Tax Appeals for a specific finding upon the ultimate fact upon which the amount of the tax was determined.

The so-called findings of fact in the case at bar contain a recital of the evidence with relation to the acquisition of the various properties from which the income was derived which is the subject of the tax. These findings purport to trace the sources from which the property was derived by the petitioner and his wife, and whether or not those sources were separate or community funds. While we recognize the difficulty of distinguishing in every case the difference between evidentiary and ultimate facts, we see no objection to a statement of some of the evidentiary facts in findings or an opinion, as is very frequently done. Where the reviewing court has power to consider only questions of law and no power to make findings of fact, it is essential for the purpose of such appeal that the appellate court at least recognize the difference between probative and ultimate facts. Here the ultimate fact is the title of the property from which the income was derived. Ownership is an ulti-

638

mate fact, and the question here is ownership. In the case of an express finding of the ultimate fact by the Board of Tax Appeals, the only question for the consideration of the reviewing court is whether or not such a conclusion is supported by substantial evidence. Separate property and community property are each defined by the statutes of California and by the interpretative decisions thereon. When the facts are ascertained, there is little difficulty in arriving at the conclusion as to whether or not the property involved is separate or community property. We can illustrate the difficulty which confronts us in this case by reference to a statement in the opinion by the Board of Tax Appeals, wherein it is said: "The petitioner and his wife both testified that there was an oral agreement between them that they should each own a separate one-half interest in all of their income and property. They testified that there was such an agreement with respect to the $10,000 fee received from the real estate sale in 1916, the salary and profits from the operation of the hotel during the years 1919 to 1923, inclusive, and all of their investments made with these and other funds."

It will be observed that the findings do not state that there was such an oral agreement, but merely that the petitioner and his wife both testified thereto. If this testimony was believed by the board, it tended to establish the claims of the petitioner. The opinion proceeds as follows:

"There is no written evidence of such an agreement with respect to any of their property prior to September 5, 1923, which is the date of the above letter from the petitioner to his wife, regarding their investment in the Janss Investment Co. and Charles H. Christie real estate ventures. This letter does not purport to be, nor can it be construed as, a valid assignment by the petitioner to his wife of any interest in these investments. It contains the statement: 'I [the petitioner] understand from you that you agree to these transactions and agree to payment of your proportion of the cash payments from any funds now held jointly by us, and that you assume liability for your proportion of future payments, such liability to attach to your separate funds as well as those held jointly by us.' It is not shown to which joint funds or separate funds of his wife the petitioner referred. The letter is not signed by the petitioner's wife and was not executed as

an agreement. We think that it has but little, if any, probative value.

"The deeds to the five real estate lots purchased in 1916 were taken in petitioner's name and so remained until May, 1932, just prior to the hearing of this proceeding, which was on June 14, 1932, when they were changed to show the petitioner's wife the owner of a one-half interest in the property. Likewise, the investments in the real estate syndicates were recorded in the petitioner's name. The formally executed agreement defining the separate interests of the petitioner and his wife in all of their property, which is set out in part above, was not executed until June 8, 1932. This agreement, of course, has no retroactive effect and does not change the status of the income of the petitioner and his wife for the taxable years 1924 and 1925. W. A. Roth v. Com'r, 17 B. T. A. 1330."

Then follows a discussion of the opinion of the case of Blair v. Roth (C. C. A.) 22 F.(2d) 932, and the similarity of the facts in that case and in the case at bar, a statement of the petitioner's testimony by question and answer, the citation of Pedder v. Commissioner (C. C. A.) 60 F.(2d) 866, and then the following:

"Aside from the presumption of law which, as we have said, operates in favor of the respondent's contention that the income in question was community income, the very nature of the question here calls for the strictest proof on the petitioner's part. Where, as in the instant case, the written records and the acts of the husband and wife for the number of years indicate that, either ill-advisedly or without knowing the result upon their tax liability, they have submitted to the community property rule of their state, they should not be permitted to avoid the legal consequences of that rule merely upon their own testimony that they had previously entered into an oral agreement between themselves by which their property rights must be determined upon some other than the community property basis. We can not escape the conviction that this is the tenor of the cases in which the courts have considered this question.

"Upon the evidence before us, we are not convinced of the existence of any valid enforceable agreement between the petitioner and his wife, prior to the written agreement executed on June 8, 1932, that their income and property should be owned

by them otherwise than 'on an equal footing' as in Blair v. Roth, supra."

We do not know from this statement of the board whether or not they believed the testimony of the husband and wife with reference to the oral agreement between them. If they disbelieved this testimony by reason of the acts of the husband and wife which were more or less inconsistent with their testimony that they had made such an agreement, of course the oral agreement cannot be considered by us. On the other hand, if the board were acting upon the legal proposition that the agreement, if made, was not binding or enforceable, such conclusion is directly in the teeth of the statute of California (Civ. Code Cal. § 158) which permits the husband and wife to enter into an agreement with relation to their property, and agree that they shall hold their property in some form other than as community property, is altogether clear from the authorities. In this connection it should be observed that there is a distinction between those cases in which the question involved is whether or not the earnings of one of the spouses is taxable to that spouse as his or her separate income, and those cases in which the question is whether or not after the property has been thus acquired its status has been or can be changed by the agreement between the parties. Such cases as Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731; Belcher v. Lucas (C. C. A.) 39 F.(2d) 74, and Helvering v. Hickman (C. C. A.) 70 F.(2d) 985, deal with the taxability of income to the spouse which earned it, and do not deal with the income derived from property which has been acquired by the spouses and is held by them under the contracts entered into between them modifying the status of the property as authorized by section 158 of the Civil Code of California.

The proper conclusion with reference to the deficiency tax in the case at bar revolves around the question of whether or not the husband and wife made the agreement that the property then owned or subsequently acquired by them should be owned by them as tenants in common as distinguished from community property ownership, each owning a one-half interest therein as his or her separate property. If such an agreement were made, it would necessitate a different conclusion from that arrived at by the board. If the testimony tending to establish this contract is disbe-

lieved, the conclusion that the property involved herein and the income therefrom was community property is no doubt correct. We have no power to make the decision as to the veracity of the husband and wife with reference to their testimony as to the agreement between them. If the Board of Tax Appeals believes that such an agreement was made, the presumption in favor of the ruling of the Commissioner and the more general presumption that property acquired by the spouses and not shown to have been acquired by gift, devise, or bequest or descent (Civ. Code, Cal. §§ 162, 163, 164; Pedder v. Commissioner, supra) is community property are overcome.

The case is remanded to the Board of Tax Appeals with instructions to specifically find whether or not an oral agreement was entered into as testified by the husband and wife, and the terms thereof, and whether or not the income in question was derived from the community property of the spouses or their separate property.