## COMMISSIONER OF INTERNAL REVENUE v. TURNEY.

### No. 7790.

Circuit Court of Appeals, Fifth Circuit.

March 7, 1936.

HUTCHESON, Circuit Judge, dissenting.

J. P. Jackson, Sewall Key, Helen R. Carloss, and Lucius A. Buck, Sp. Assts. to Atty. Gen., and Robert H. Jackson, Asst. Gen. Counsel, Bureau of Internal Revenue, and Phillip A. Bayer, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for petitioner.

Nelson Phillips, of Dallas, Tex., for respondent.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The petitioner challenges the decision of the Board of Tax Appeals that one-half of the amounts of bonus money paid in 1929 to the respondent, the taxpayer, by the lessee under two oil and gas leases made by the respondent, covering land the surface right to which was owned by the respondent, the right to minerals in that land having been reserved by the state of Texas when it granted the surface rights therein, was not taxable as income of the respondent. Each of the leases contained the following:

"If any of the above described land is State School Land, carrying a mineral classification, it is hereby understood and agreed as to such part or parts so classified, the lessee shall deduct and pay to the State of Texas as royalty a one-sixteenth (1/16th) of the oil, gas, casinghead gas or other by-products of petroleum, out of the royalties hereinafter provided for.

"If, by decision of the Supreme Court of Texas, it shall hereafter be determined that out of the bonus or rentals specified in this lease to be paid by lessee to lessor, now due or hereafter to become due, there shall be payable to the State of Texas by reason of certain of the lands herein leased being State School Lands bearing mineral classification, a sum or sums of money, the lessor hereby agrees and binds himself, his heirs, executors, administrators or assigns to pay to the State of Texas such sum or sums of money so determined to be due it out of said bonus or rentals. In the event lessor, his heirs, executors, administrators or assigns, fail or refuse to pay such sum or sums which may be determined to be due the State of Texas, as hereinabove set forth, if any, lessee hereby reserves the right to pay same, in which event such payment or payments by such lessee shall constitute a lien upon the State School Lands herein leased to secure to the lessee the repayment of such sum or sums, of money advanced by it."

An act of the Legislature of Texas, passed in 1919 (Revised Civil Statutes of Texas 1925, art. 5367 et seq.), made the surface owner of such lands the agent of the state for the making of sales and leases of the state's mineral interest, specified the terms and conditions for such sales or leases, and fixed the amounts to be paid to the state from the proceeds of such sales or leases, and the part of such proceeds to which the surface owner was to be enti-

tled by way of compensation. That act was construed and sustained by the Supreme Court of Texas in the case of Greene v. Robison, Land Com'r, 117 Tex. 516, 533, 8 S.W.(2d) 655, which was decided on June 25, 1928. Under that statute the above-mentioned payment to the respondent had the effect of obligating him to pay over to the state of Texas one-half of the bonus money received. Empire Gas & Fuel Co. v. State of Texas, 121 Tex. 138, 47 S.W. (2d) 265. As to one-half of the amount of bonus money paid to respondent, he received and held it as the duly authorized agent of the state of Texas. Prior to respondent's receipt of the bonus money, his obligation to pay to the state one-half of the amount so received by him had been fixed by law and was absolute. The instant case is unlike the case of North American Oil Consol. vs. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197, and other similar cases, in that in each of those cases the taxpayer's right to the money in question was undetermined at the time he received it, while in the instant case when the taxpayer received the bonus money the state's right to one-half of that bonus money was not subject to be disputed. So far as we are advised, no court has gone so far as to decide that the fact that the taxpayer, at the time he received a sum of money, asserted a claim thereto requires tax officials to include that sum in the taxpayer's income of the year he received it, though it then was apparent to any informed person that that claim was wholly unfounded, as confessedly the taxpayer received that money as the agent of another, whose right to that money, before it was received by the taxpayer, had been finally determined by the decision of a court of last resort. From the time the respondent received the bonus money, it was not only manifest that under then well-settled law he received and held one-half of it as agent of the state of Texas, but by the terms of the leases under which it was paid he was obligated to pay one-half of that money to the state of Texas. In no real sense was the question of the taxpayer's liability as agent an open one throughout the year 1929, as when he received the bonus money his liability as agent was fixed and absolute. Blum v. Helvering, 64 App.D.C. 78, 74 F.(2d) 482, 484. As to one-half of the

bonus money it was received and held under such circumstances that tax officials were not required to treat it as included in the taxpayer's taxable income. Tax officials are not required to treat as income money received by a taxpayer when, under well-settled law, his receipt of it has the effect of obligating him unconditionally to pay that money to another. The fact that at the time of the hearing before the Board of Tax Appeals respondent had not complied with his obligation as agent did not make what the state was unconditionally entitled to receive taxable income of the respondent. That money being income of the state, in the hands of its agent, was forbidden to be included in respondent's gross income. Section 22 (b) (9) of Revenue Act of 1928, 45 Stat. 799, 26 U.S.C.A. § 22 and note.

The petition is denied.

HUTCHESON, Circuit Judge (dissenting).

The petition for review tests the correctness of the ruling of the Board that one-half of an oil lease bonus received by the taxpayer in connection with a lease he made as agent for the state of Texas under the Relinquishment Act[1] was not taxable as income.

The Commissioner insists that it was in fact paid to and received by the taxpayer under a claim of right, and, within the rule laid down in North American Oil Consol. v. Burnet, 286 U.S. 417, 52 S.Ct. 613, 76 L. Ed. 1197, it was taxable to him as income, though in law he was not entitled to receive it and could be held accountable to the state for it. The Commissioner urges upon us that the record leaves in no doubt that the lessee paid it to the taxpayer, and he received it not as agent of the state, but as his own, both lessee and taxpayer intending and agreeing as to the particular money that it should be his, his accountability to be not for that particular money the lessee paid him, but for an equivalent sum in other moneys should the state prevail in its claim that it was entitled to one half the bonus.

The taxpayer insists that what it and the lessee in fact intended as to the particular money received as bonus is without significance here; that the law under which the lease was made as construed by the

---

[1] Act of 1919, Rev.Civ.Stats. of Texas 1925, art. 5367, School and Asylum Lands. Greene v. Robison, 117 Tex. 516, 8 S.W.

(2d) 655; Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.(2d) 265.

Supreme Court of Texas by the force of its terms made the taxpayer the state's agent to collect for it one-half of the bonus money, and when that one-half was paid to the taxpayer it was by force of the law paid as, and it remained, the state's money unaffected equally by the intention of the payor and payee, and by the claim to and use of it the payee made.

The Board took the taxpayer's view. It made no finding on the issue of intent. Setting out fully in its opinion, McGinley Corporation v. Commissioner, 31 B.T.A. 266, as its findings of fact the stipulation agreed to by the parties[2] it in its opinion concluded that under the Relinquishment Act and under Empire Gas & Fuel Co. v. State (Tex.Civ.App.) 21 S.W.(2d) 376; Id., 121 Tex. 138, 47 S.W.(2d) 265, "one half of the bonuses collected by petitioner, W. W. Turney, and the O-2 Ranch was the property of the State of Texas, and that under section 116 of the Revenue Act of 1928, 26 U.S.C.A. § 116 and note, and many decisions of the Federal courts it is nontaxable by the United States."

Tippett v. Commissioner, 25 B.T.A. 69, involving a bonus from leases of the same kind, was decided by the Board differently from the decision here. It was distinguished by the majority in this case on the ground that in a suit by the state for its share of the bonus, Tippett, insisting that the construction placed on the Relinquishment Act in Greene v. Robison, supra, was unsound, and that the legislative act of March 13, 1931, had relieved him of the duty to pay it, had denied the state's claim to any part of it. It pointed to the fact that after Tippett's appeal had been decided by the Board, the Supreme Court of Texas, in Empire Gas & Fuel Co. v. State, 121 Tex. 138, 47 S.W.(2d) 265, had reaffirmed the doctrine of Greene v. Robison and in addition held the Act of March, 1931 (Vernon's Ann.Civ.St. art. 5368a), unconstitutional as settling beyond controversy that the state was entitled to one half of the lease bonus. A dissenting member, pointing to the stipulation that these moneys were received by the partnership in 1929 and used generally in its business, and that no part of them has ever been paid to the state, insisted that they were taxable as receipts of the taxpayer under the rule of North American Oil Consol. v. Burnet, supra, available to him as a loss deduction when paid over to the state.

I think it quite clear that the majority of the Board, in resting its decision that the sums were not taxable because they were the property of the state of Texas, took an incorrect view both of the effect in law of the Humble's payment to Turney, and of the theory upon which the Commissioner had taxed to Turney half of the bonus in dispute. These moneys were not taxed to Turney as moneys of the state, but as his own moneys, moneys the Humble Oil Company as lessee had paid him, with no restrictions except that should the state prevail in its claim as to any part of them, he would pay their equivalent either to the Humble Oil Company or to the state. That these payments to Turney were not in law payments to the state and that the state did not recognize them as such is

---

[2] These are the material facts shown by the stipulation: (1) Turney, the taxpayer, as a member of a partnership, owned the O-2 Ranch. (2) During 1929 two oil and gas leases were entered into between the ranch as grantor, and the Humble Oil Company as grantee. (3) Under the terms of the two leases $57,600 was paid as bonus, of which sum $29,283.02 was paid with respect to 15,040 acres of school mineral land. (4) When the bonus, amounting to $29,283.02 on the school lands, was paid to the O-2 Ranch in 1929, the partnership took the money so received and used it generally in its business. (5) Neither in the year 1929 nor at any time since, has the taxpayer or the partnership paid over or surrendered any part of the bonus. (6) Each of the leases contained in substance the provision: That the state of Texas should be paid a royalty for the state's school mineral land of 1/16 and that if by the decision of the Supreme Court of Texas the state of Texas should be held to be entitled to the bonus, the lessor agrees to pay the state such sum or sums of money so determined to be due it out of said bonus or rentals, the lessee reserving the right, in the event of lessor's failure to pay such sums determined, to pay the same and charge them against lessor's interest. (7) The state of Texas has instituted action against the lessee for the sums claimed to be due the state as its part of bonus moneys from school mineral lands. Included in the amount sued for is the one-half of the bonus on the leases in question paid in 1929 to Turney. (8) On November 9, 1933, the lessee Humble Oil Company demanded of the taxpayer that he pay that amount either to it or to the state.

shown by the decision in Empire Gas & Fuel Co. v. State (Tex.Civ.App.) 21 S.W. (2d) 376, holding that the law required the payment to be made to the Land Commissioner and by the state's petition in the suit of State v. Humble Oil & Refining Co. The state suing by that petition the Humble Company alone, and looking alone to it as accountable for the state's one half of the bonus due under the lease, pleaded in accordance with these decisions that the Relinquishment Act requires "all payments on account of bonuses and rentals due the State on oil and Gas leases executed under it, to be made to the Land Commissioner at the General Land Office in Austin." If, then, one-half the bonus payment is not taxable to Turney, it is not I think on the ground the Board took, that the moneys were either in fact or in law the property of the state, but that in fact he received them as the state's, and held them in that capacity. That though he used them in his business, he did so not under a claim of right to them as his own, but recognizing them as the state's and himself as obligated to the state for them.

I think the decisions the Commissioner relies on, the North American Case, supra; Board v. Commissioner (C.C.A.) 51 F.(2d) 73; Champlin v. Commissioner (C.C.A.) 78 F.(2d) 905; Commissioner v. Brooklyn Union Gas Co. (C.C.A.) 62 F.(2d) 505; Blum v. Helvering, 64 App.D.C. 78, 74 F. (2d) 482; Brown v. Helvering, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725, leave in no doubt that moneys received by a taxpayer as his own under a claim of right and without restrictions as to their disposition, are none the less income to him in the year they are so received because his right to them is in dispute, or because contingently he may have to pay over their equivalent. The rule making such moneys taxable as income in the year actually received, rather than placing them in suspense until the issue in regard to the right to them is determined, and then taking them into account for tax purposes on the basis of the finally ascertained result is a practical one, based on the settled taxing practice of an annual accounting. The decisions make it clear that it is not important to speculate upon whether a better system might be or have been adopted. It is important only to determine whether under the system actually used, the moneys in question were received as his earnings and therefore taxable as income to the taxpayer. These decisions make it clear that moneys received by the taxpayer are treated as his earnings, and are taxed to him as income in that year when the taxpayer, by his conduct, has affirmed that they are, because under the taxing system adopted it is the reasonable and practical thing to accept his view.

None of these decisions have had to do with a situation involving a claim of agency exactly like this, where the money has come into existence through an act which the law has characterized as an act of agency. All of them have had to do with a situation in general like this, where moneys paid over are in dispute. None of them lay down a rule of thumb by which all cases may be decided. They do, however, lay down the general rule that if a taxpayer receives moneys and uses them as his own under the asserted claim that they are his absolutely, and not contingently, the fact that his title to them is then in dispute and that they may be later recovered from him does not prevent them, for tax purposes, from being what he claims them to be, his own.

Of the first importance then to the determination here of whether the moneys in question are taxable as income to the taxpayer in the year they were received, is a specific finding not only of the circumstances under which the taxpayer took the moneys and how he used them, but as to the intention and understanding under which they were paid to and received by him. What is important, indeed essential here, and what is wanting in the findings is the ultimate determination and finding whether in fact he took them under a claim of right as his own, subject only to a contingent liability to pay their equivalent, if that claim was overthrown, or whether, in fact, he received them as agent for the state under a recognized obligation to the state for them, and therefore not as his earnings or income. The Board has not made this necessary finding. We are without power to make it. Helvering v. Rankin, 295 U.S. 123, 55 S.Ct. 732, 79 L.Ed. 1343; Anderson v. Commissioner (C.C.A.) 78 F.(2d) 636, 637; Belridge Oil Co. v. Helvering (C.C.A.) 69 F.(2d) 432; Fuller v. Com'r (C.C.A.) 81 F.(2d) 176; Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623; Champlin v. Commissioner (C.C.A.) 78 F.(2d) 905.

Under these circumstances, I think our order should be one of remand to the Board with instructions to fully hear the facts and circumstances attending the receipt and use

of the moneys in question, and to specifically determine and find whether the taxpayer received the moneys in question as his own, and therefore as earnings for that year, or as agent for the state, to hold and account to the state for them as such.

From the order denying the petition for review I respectfully dissent.