### ARONSON v. COMMISSIONER OF INTERNAL REVENUE.
### No. 8624.

Circuit Court of Appeals, Ninth Circuit.
July 7, 1938.

Livingston & Livingston, of San Francisco, Cal., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key, Carlton Fox, and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Petitioner, Daniel Aronson, as guardian of Herbert Hellman Aronson and Marco Hellman Aronson, minors, seeks reversal of two decisions[1] of the Board of Tax Appeals which determined that there were deficiencies aggregating $12,391.04 in respect of taxes on said minors' income for the calendar year 1929. The deficiencies were held to have resulted from failure to report as income, and pay taxes on, gains derived from the exchange of 936 shares[2] of stock of Merchants National Trust & Savings Bank of Los Angeles for a like number of depositary certificates issued by Title Guarantee & Trust Company.

Facts concerning which no dispute exists are as follows:

Amy Hellman Aronson, mother of the above named minors, died intestate on February 9, 1920. The minors were her only heirs. Her brothers, Marco H. Hellman and Irving H. Hellman, were administrators of her estate. Her estate consisted, in part, of shares of stock of Hellman Commercial Trust & Savings Bank (hereafter called Hellman Bank) and of Merchants National Bank[3] of Los Angeles. On August 17, 1925, the administrators of her estate filed in the proper probate court

their final account and petition for distribution. On October 5, 1925; the probate court entered a decree settling and allowing the administrators' account and directing that all property of the estate, including Hellman Bank stock and Merchants National Bank stock, be distributed to the minors.

On April 21, 1926, Frida Hellman Cole and Louis M. Cole were, by said probate court, appointed guardians of the persons and estates of the minors. Louis M. Cole died in September, 1930. Frida Hellman Cole resigned and was succeeded by David Tannenbaum on June 23, 1932. Tannenbaum resigned and was succeeded by petitioner on September 25, 1933.

In 1926, Hellman Bank and Merchants National Bank were consolidated to form Merchants National Trust & Savings Bank, which thereupon issued its stock in exchange for that of the two consolidated banks. Thus, in exchange for the Hellman Bank and Merchants National Bank stock which the probate court had ordered the administrators to distribute to the minors, 1,292½ shares of Merchants National Trust & Savings Bank stock were issued. Of the 1,292½ shares so issued, 24 shares—not here involved—were issued to the guardians. The other 1,268½ shares were issued to other persons. They were never issued to, and never stood in the names of, the guardians or their wards.

Prior to November 1, 1928, 936 of the 1,268½ shares last referred to were pledged to various banks to secure loans[4] aggregating more than $2,479,000. None of the loans was to the minors or their guardians.

On November 1, 1928, an agreement (hereafter called the pool agreement) was entered into by Commercial Holding Company and a committee of stockholders of Merchants National Trust & Savings Bank, providing for the deposit of 100,000 shares of the bank's stock by its stockholders and the acquisition thereof by Commercial Holding Company in exchange for a like number of negotiable depositary certificates to be issued by Title Guarantee & Trust Company. Thereafter, in 1928, the 936

---

[1] One decision relates to the income of Herbert Hellman Aronson, the other to the income of Marco Hellman Aronson. Petitions to review these decisions were consolidated and heard together in this court.

[2] In two lots of 772 shares and 164 shares, respectively.

[3] Not to be confused with Merchants National Trust & Savings Bank, previously mentioned.

[4] Other shares were similarly pledged, but we are concerned only with the 936 shares mentioned above.

shares above referred to were deposited, pursuant to the pool agreement, and subject to the pledges above referred to.

On January 4, 1929, pursuant to the pool agreement, the 936 shares of stock were exchanged for 936 depositary certificates, which had at that time a cash value of $200 each. If the 936 shares so exchanged were in the hands of the guardians, 772 had, in their hands, a cost basis of $71.7314 each, and 164 had, in their hands, a cost basis of $71.88 each. Whether the 936 shares were or were not in the hands of the guardians, is a question yet to be decided.

Upon completion of the exchange, the 936 depositary certificates were delivered to, and were thereafter held in pledge by, the banks to which the 936 shares of stock had been pledged. No depositary certificates were issued to the guardians.

Petitioner contended, and produced evidence tending to establish, that the guardians (1) never had possession of the 936 shares of stock, (2) never pledged them, (3) never deposited them for exchange, (4) never exchanged them for depositary certificates, and (5) never received any such certificates. On these five issues, the Board made no findings.[5] Such findings are necessary. Without such findings, it is impossible to say whether the minors did or did not derive taxable gains from the exchange referred to.

Such findings should be made by the Board, not by this court. Our review of the Board's decisions is limited to questions of law. We are not authorized to make findings of fact. Belridge Oil Co. v. Helvering, 9 Cir., 69 F.2d 432, 433; Anderson v. Commissioner, 9 Cir., 78 F.2d 636, 637; Doernbecher Mfg. Co. v. Commissioner, 9 Cir., 80 F.2d 573, 574; Eaton v. Commissioner, 9 Cir., 81 F.2d 332, 334; Fulton Oil Co. v. Commissioner, 9 Cir., 81 F.2d 330, 332; Diller v. Commissioner, 9 Cir., 91 F.2d 194, 195; Von's Investment Co. v. Commissioner, 9 Cir., 92 F.2d 861; Kelleher v. Commissioner, 9 Cir., 94 F.2d 294, 295.

The decisions are reversed and the cases are remanded, with directions to make findings on the five above mentioned issues (such findings to be in addition to those heretofore made), and thereupon to render such decisions as the facts may warrant.

To enable it to make such additional findings, the Board may take further evidence or, if tendered, a stipulation of the parties.

Reversed and remanded.

---

[5] The Board found that the shares were pledged, deposited and exchanged, but did not find who pledged them, who deposited them, or who exchanged them.